Marilyn MILLS, Respondent,

v.

James F. MILLS, Appellant.

No. 44971.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 20, 1983.

Arthur Friedman, St. Louis, for respondent.

Richard C. Bresnahan, Clayton, for appellant.

SIMON, Presiding Judge.

Husband appeals from a decree of dissolution.[1] He asserts trial court erred in the findings of fact and in provisions of the decree relating to the marital property, maintenance and attorney's fees and costs. The decree is affirmed.

The voluminous record establishes that the parties were married in April, 1973 and separated in November, 1978. Husband had custody of two minor children by a previous marriage, but there were no children born of this marriage.

Wife has a degree in education, had taught elementary school and worked as an administrative aid for a juvenile court in Florida prior to the marriage. During the marriage, she worked as a management recruiter in 1975 and earned between $7,000 and $10,000 a year. In 1978, she became 55% owner of a children's clothing store. At the time of trial, she was in the process of winding up its affairs and was unemployed. Wife received income dividends from shares of stock in F & F Corp., a closely held family corporation. In 1980, the dividends were $3,000.

In the beginning of the marriage, husband was employed by Tri Continental Leasing earning between $18,000 and $24,000 per year. During the first six months of 1975, he worked for the Bank of Virginia earning $20,000. In 1974, he and two other partners formed a Missouri corporation, Great American Financial Corporation, which was in the business of brokering equipment leases. Husband owned 45% of the stock. In mid-1975, he quit his position with the bank and began devoting his energies full time to this business. During the marriage, husband acquired the following interests in five other businesses: Great American Leasing (50% partnership interest); Midwest Resources (25% partnership interest); Great American Energy Corp. (25% interest) Pea Ridge Rock, Inc. (25%

---

1. Husband's motion to permit filing of certain exhibits is granted.

interest); and Missouri-Iowa Farms (25% partnership interest).

In 1980, after the parties separated, husband sold his interest in the Missouri-Iowa Farms partnership for $176,744.96. A portion of these proceeds, $72,000.00, was placed in a certificate of deposit which was pledged as collateral for a loan at the time of trial. At the time of trial, Pea Ridge Rock, Inc., Midwest Resources and Great American Energy Corp. were in Chapter 11 reorganization proceedings. Husband testified that Great American Financial Corp. had a gross income of $356,365.00 in 1978 and taxable income of $72,771.00. It had a gross income of $291,000.00 in 1979 and taxable income of $21,864.00. Financial figures were not available for 1980, but husband testified that business had not been good because of high interest rates and that its liabilities exceeded its assets. Husband valued his interest in all of these businesses at zero.

In 1977, husband had earnings of $82,625.00; in 1978, earnings of $81,500.00 and in 1979, earnings of $52,000.00. Husband was on salary of $40,000.00 per year at Great American Financial. At the time of trial husband was owed $24,500.00 in back salary and a total of $139,875.66 by the other business entities.

Both husband and wife presented evidence that the other had committed acts of marital misconduct.

After a lengthy hearing, comprising thirteen days of testimony over a seven month period, the trial court filed findings of fact and conclusions of law. The court set aside to wife separate property consisting of 18 shares of stock in F & F Corp. valued at $54,000.00, subject to a lien of $25,000.00; and furniture, furnishings, jewelry and silver valued at $30,000.00.

The court distributed to wife the following marital property: a 1979 automobile with a net value of $3,600.00; one-half of 1978 and 1979 income tax refund totaling $10,489.50; one-half of pension and profit sharing plan in Great American Financial Corp. valued at $3,000.00; household furnishings and personal property valued at $10,000.00; the family residence in Ladue valued at $152,000.00, subject to two deeds of trust totaling $88,000.00 which wife was required to assume; and one-half of a $32,897.00 long term capital tax loss carry forward.

Husband was awarded all interest in the Great American Financial Corp., Great American Energy Corp., Pea Ridge Rock, Inc., Midwest Resources and Great American Leasing, "all income producing property, net value o;" one-half of his pension and profit sharing plan in Great American Financial Corporation; a $72,000.00 certificate of deposit; a Bouvier dog named Xylo, valued at $500.00; a Fireman's Fund Insurance policy; the other half of the 1978 and 1979 income tax refund; the remaining half of the capital tax loss carry forward; all bank accounts in his name; and all clothing and jewelry in his possession.

Wife was required to pay a $25,000.00 loan secured by her F & F stock. Husband was ordered to pay $20,000.00 in loans and to hold wife harmless for the debts. Husband was ordered to pay wife the sum of $300.00 per month for maintenance for a period of two years and to pay $41,500.00 for attorney's fees and $2,406.84 for costs.

On appeal, the judgment must be affirmed if it is supported by substantial evidence, is not against the weight of the evidence or the trial court did not erroneously declare or apply the law. *Rasmussen v. Rasmussen*, 627 S.W.2d 117, 119 (Mo.App. 1982). In addition, due regard must be given to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.01.

Nine of husband's nineteen points relate to the disposition of marital property. Husband contends that the trial court erred in finding that a long term capital loss carry forward of $32,897.00 was marital property and that awarding one-half of it to wife violated Internal Revenue regulations. Husband asserts that the trial court's finding was not supported by substantial evidence because the evidence established the

loss carry forward resulted from the sale of stocks which were his separate property.

Wife testified that the long term capital loss carry forward resulted from the sale of stock of various companies all acquired by husband during the marriage.

■ Pursuant to the provisions of 26 U.S.C.A. § 1212, only a portion of a long term capital loss can be deducted by the taxpayer each year. Any excess capital loss must be carried forward each year until exhausted. Wife's testimony established that the loss carry forward was generated from the sale of marital property. Husband produced no contrary evidence nor refuted wife's testimony. Consequently, the trial court did not err in finding the long term capital loss carry forward was marital property.

■ Husband further asserts that the court's order awarding wife one-half of the loss carry forward violates Treasury Reg. § 1.1212–1(c). It is well settled that a state court cannot override federal income tax regulations. Calia v. Calia, 624 S.W.2d 870, 873 (Mo.App.1981). We have examined the regulation and do not find that the trial court's order violates the regulation in any manner.

■ Next, husband alleges the trial court erred in assigning a value of $6,000 to husband's pension and profit sharing plan with Great American Financial Corporation and awarding one-half to wife. Husband testified that his interest in the pension and profit sharing plan at the time of trial was valued at $6,000. He further testified that it had been pledged to secure a loan and that it had been taken to satisfy the delinquent account. Husband introduced no documentation to support his claim that the asset no longer existed. The trial court apparently chose to disbelieve that portion of his testimony. Husband further complains that there was no evidence the pension plan was vested and therefore, the plan was not marital property, citing Delay v. Delay, 612 S.W.2d 391 (Mo.App.1981). However, that a spouse's interest in a pension plan is contingent or subject to divestment does not prevent it from being marital property. Kuchta v. Kuchta, 636 S.W.2d 663 (Mo. banc 1982). We find no merit to this point.

Husband asserts that the distribution of marital property was unjust and grossly disproportionate, because the trial court improperly valued the marital assets and failed to properly consider the factors set forth in § 452.330 RSMo 1978. Section 452.330 mandates that the court shall divide the marital property after considering: (1) the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (2) the value of the property set apart to each spouse; (3) the economic circumstances of each spouse including the desirability of awarding the family home to the spouse having custody of any children; and (4) the conduct of the parties during the marriage.

■ The trial court is vested with considerable discretion in dividing the marital property. It is not required to make an equal division of the marital property, only a just division. Calia v. Calia, 624 S.W.2d 870 (Mo.App.1981). On appeal, the party challenging the division of marital property has the burden of overcoming the presumption of correctness of the order prescribing such division. Rasmussen v. Rasmussen, 627 S.W.2d 117 (Mo.App.1982). An appellate court will only interfere if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of judicial discretion. Metts v. Metts, 625 S.W.2d 896, 899 (Mo.App.1981).

Husband alleges that using the value of the marital property as found by the trial court, the result is an apparent 54% to 46% division of marital property in favor of wife. However, husband asserts the trial court valued the certificate of deposit awarded to him at $72,000, when in fact it was pledged as security for a loan and had a net value of zero. According to husband, using this value for the certificate of deposit, only 23% of the marital assets were awarded to him and 77% to wife; an unjust and grossly disproportionate division.

The certificate of deposit originated in husband's sale of his interest in the Missouri-Iowa Farm partnership. During the dissolution proceedings, husband sold his interest in the partnership for $176,744.96. Of this amount, $100,000 was placed in a certificate of deposit at Mark Twain National Bank and pledged to secure the completion of reclamation work on a strip mining operation in Illinois. In March, 1981, husband withdrew $28,000, leaving a $72,000 certificate of deposit. On May 5, 1981, husband and his partner borrowed $144,000 from Mark Twain National Bank, and husband pledged the $72,000 certificate of deposit to secure the loan. At this time, husband received $72,000 in cash. He paid $38,000 to an Illinois bank and was released from liability on the reclamation bond. Husband then deposited the remaining $34,000 into his personal bank account and paid personal and business debts exhausting the proceeds. In its findings of fact, the trial court expressly acknowledged that the certificate was "pledged as collateral."

Husband had made effective use of the certificate and we find no error in the manner in which the trial court valued it or assigned it. Indeed, the trial court could well have found the entire $100,000 certificate of deposit to be marital property, instead of only $72,000.

In *In Marriage of Faulkner,* 582 S.W.2d 292, 295–96 (Mo.App.1979), this court found no error in allotting a $13,000 bank account to wife as her share of marital property, even though wife contended that the account was exhausted at the time of trial. The court held that the "inclusion of the depleted assets in the division of marital property apparently stemmed from the court's reluctance" to deny husband the benefit of the assets spent by wife. 582 S.W.2d at 296. See *Daniels v. Daniels,* 557 S.W.2d 702, 704 (Mo.App.1977). Husband made the decision as to the use of the $72,000 loan proceeds pledged by the certificate. He cannot now be heard to complain that it is not worth $72,000.

In addition, husband was awarded his interest in the corporations and partnerships whose debts he paid with a portion of these proceeds. While husband valued his interest in these businesses at zero, their affairs were apparently not hopeless. Husband spent over $100,000 in legal fees between January, 1980 and May, 1981 in prosecuting and defending law suits concerning these businesses. For example, husband and his partner filed a law suit seeking $20,000,000.00 in damages from two of Great American Energy Corp.'s shareholders for fraudulent acts committed against the corporation. Great American Leasing had an equity of $56,000.00 in a large piece of mining equipment which had disappeared. Husband had filed a law suit to protect the partnership's interest in the equipment. Husband testified that Great American Financial Corporation had work in progress of over $600,000.00. L & L Corp., a wholly owned subsidiary of Great American Financial, had $124,000.00 of work in progress. We also note, as we are sure that the trial judge did, that during the dissolution proceedings, husband valued his interest in the Missouri-Iowa partnership at zero, but seven months later he sold his interest for over $176,000.00.

The trial court had before it evidence of the contribution of each spouse to the acquisition of the marital property, including husband's higher earnings during the marriage, wife's contribution as a homemaker, and the use of wife's separate property in the purchase of the marital residence. The court had evidence of the economic circumstances of the parties, including husband's superior earning capacity in the job market, (apart from his position with Great American Financial Corp.) as well as the personal liabilities of husband on business loans.

The court had evidence of the value of separate property set apart to wife. The court did not take into consideration wife's potential interest in a $300,000 estate. Husband contends the trial court erred by preventing him from introducing evidence of this inheritance. Wife's father died in 1976 and left a marital and residuary trust with assets valued at $300,000.00. At trial, wife testified that she had not received any

money from the trust and did not know whether she ever would. The transcript reveals that husband was allowed to cross-examine wife as to her knowledge of the terms of the trust and there is no evidence that wife's interest in that trust should have been considered in dividing the marital property.

The trial court had before it evidence of marital misconduct on the part of husband and wife, though it made no express finding on this issue. Husband contends the court erred in failing to make findings of fact that the wife was guilty of marital misconduct. Wife denied the allegations. The court was not required to believe husband's evidence. In any event, neither party requested a specific finding on this issue. All fact issues upon which findings are not made are assumed found in accordance with the judgment. Rule 73.01.

We have reviewed the entire record and conclude that the court properly considered all of the factors enumerated in § 452.330 RSMo 1978. The trial court did not abuse its discretion in dividing the marital property.

In his next point, husband asserts that the trial court erred in awarding wife maintenance of $300.00 per month for a period of two years. The trial judge has wide discretion in awarding maintenance and such an award will not be disturbed on appeal, absent an abuse of that discretion. *Schreier v. Schreier*, 625 S.W.2d 644, 650 (Mo.App.1981).

The trial court found that wife was unemployed at the time of trial and has been unable to support herself on her earnings from separate property to provide her reasonable needs according to the standard of living established during the marriage.

It is clear from the record that wife does have marketable job skills. At the time of trial her business had closed and she was in the process of winding up its affairs. The trial court's order allows her to finish that task and find appropriate employment in order to support herself. The record establishes that the trial court properly considered the factors set forth in § 452.335 RSMo 1978 and the award of maintenance of $300 per month for two years was not an abuse of that discretion.

Husband also challenges the award of $41,500.00 in attorney's fees and $2,406.84 in costs. Husband attacks both the reasonableness of the fees and his ability to pay. Husband incurred legal fees in excess of $40,000.00 for his own representation, and admitted that the amount was reasonable considering the complexity and the length of the proceedings. Wife was represented by two attorneys. Wife's first attorney testified his bill was slightly over $3,000.00. Wife's second attorney testified that his bill was over $38,500.00. He submitted a detailed account and was subjected to vigorous cross-examination by husband's attorney.

It is well settled that the trial court is an expert on the issue of attorneys' fees and is given wide latitude in the allocation of fees and costs. *Flach v. Flach*, 645 S.W.2d 718, 722 (Mo.App.1982). The awards should not be disturbed unless there is a manifest abuse of discretion. *Bray v. Bray*, 629 S.W.2d 658, 659, 660 (Mo.App. 1982). The record indicates no abuse of discretion.

In his next point, husband complains that the trial court abused its discretion when it limited him to one hour for rebuttal evidence on the last day of trial. Husband cites only Canon 2 of the Supreme Court Rule in support of his contention. This trial consumed thirteen days over a seven month period. Husband's attorney was admonished several times by the trial court for not being prepared and delaying the proceedings. Apparently there were six or seven exhibits of more than seventy-five which husband's attorney was prevented from introducing into evidence because of the court's ruling. However, neither the expansive transcript nor husband's brief enlightens this court as to the nature of the exhibits or the manner in which he was prejudiced by the omission of these exhibits from the record. His unsupported assertion

of prejudice is insufficient. We find no merit to his point.

Husband also asserts that the trial court improperly allowed wife's attorney to offer testimony of which the wife's attorney had no personal knowledge and without the opportunity of cross-examination. Such an allegation distorts the record. Wife's attorney asked opposing counsel if he would stipulate to certain facts to which his client would testify. Husband's attorney refused to stipulate and the court so acknowledged. There is no evidence in the record that the court accepted as facts any part of the proffered stipulation.

At the same time, wife's attorney also stated that since he first testified concerning his fees, he had incurred an additional $5,450.00 in fees. Husband also alleges the trial court erred in considering this testimony. The trial court, as previously noted, is an expert on attorneys' fees. The time which wife's attorney spent in court since the last time he testified was, of course, a matter which the court could notice without testimony or any evidence. We find no merit to this point.

In husband's last three points, he complains the trial court erred in refusing to make findings of fact on the issues of: (1) wife's health; (2) husband's debts; and (3) husband's income. Husband apparently argues that because the trial court made no findings on these issues, it failed to consider the evidence related to these points. We find no merit to this contention. As previously noted, Rule 73.01 only requires the trial court to make findings "on such controverted fact issues as have been specified by counsel."

Husband's attorney only made a general request for findings of fact. A general request for findings is insufficient under Rule 73.01 to require the court to make specific findings. *Boone v. Boone,* 637 S.W.2d 249, 250 (Mo.App.1982). All facts upon which findings are not made are assumed to be found in accordance with the judgment. *Walker v. Walker,* 631 S.W.2d 68, 71 (Mo.App.1982).

There is no evidence in the record that the trial court failed to consider the evidence related to these issues in rendering its decree.

The judgment is affirmed.

STEPHAN and GAERTNER, JJ., concur.