In re the MARRIAGE OF John C. CLARK and Janet M. Clark.

John C. CLARK, Appellant and Cross Respondent,

v.

Janet M. CLARK, Respondent and Cross Appellant.

Nos. 14512, 14569.

Missouri Court of Appeals, Southern District, Division One.

Oct. 21, 1986.

---

1. All motions of the parties pending on appeal are overruled.

Winston Buford, Eminence, Milton B. Garber, Fulton, for appellant and cross respondent John C. Clark.

Tom K. O'Loughlin, II, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for respondent and cross appellant Janet M. Clark.

CROW, Chief Judge.

On October 8, 1985, the trial court entered a decree dissolving the marriage of John C. Clark ("John") and Janet M. Clark ("Janet"). Custody of their only child, a boy born September 17, 1981, was awarded to John, with Janet receiving extensive temporary custody at specifically scheduled times. The decree, after setting apart to each party such party's separate property, and dividing the marital property, awarded Janet $4,000 "alimony in gross" and a $750 attorney fee.

John appeals (number 14512), complaining that the trial court erred in (1) awarding Janet the $4,000 alimony in gross, (2) failing to order Janet to pay a reasonable amount of child support, and (3) awarding Janet the $750 attorney fee.

Janet appeals (number 14569) but, as we shall see, her notice of appeal was untimely, therefore we need not list her assignments of error.

John, age 63 at time of trial, and Janet, age 42 at time of trial, began living together in St. Louis in 1970. At that time, John was employed by the "Post Office department," and Janet was employed by the City of St. Louis.

On March 11, 1977, John retired after 32 years with the postal service. At that time, as we understand John's testimony, he owned two adjoining 40–acre tracts in "the northeast part of Shannon County." Upon retiring, John left St. Louis and moved into an "A–frame" on the Shannon County land. Janet continued to reside in St. Louis, but visited John in Shannon County "every weekend or every other weekend, something on that order."

Later on—the date is not precise—Janet was "laid off" from her job, which had been paying her $23,000 per year. She continued to visit John regularly, and, around 1980, purchased 40 acres adjacent to John's property.

John and Janet were married in 1981. By that time, as we understand John's testimony, he had built an "addition" onto the A-frame, and had acquired 60 more acres of land about a mile from his home.

After the marriage, Janet moved in with John. In the spring of 1982, Janet departed, taking the child with her. A reconciliation ensued, but another separation took place the next year. The parties again reconciled, but in March, 1984, Janet left for the third time, and John immediately instituted the dissolution proceeding that spawned these appeals.

At time of trial, Janet was residing in a rented house in Perryville, two blocks from her mother's home, and was earning $18,000 per year as executive director of a parochial school fund-raising foundation. John was residing in his home in Shannon County, and was drawing $18,936 annually

in retirement income. John disclosed he had approximately $7,500 in the "post office credit union" in St. Louis, and some $900 in the Bank of Bunker.

The dissolution decree set apart to John, as his separate property, (a) his home and real estate heretofore described, (b) his postal savings, (c) a 1976 Toyota sedan, (d) a 1976 Dodge station wagon, (e) household furnishings including two couches, numerous chairs, a kitchen table, two refrigerators, two beds, four cots, a television, a washing machine, a dryer, and a freezer, (f) a tractor with attachments, (g) a tiller, (h) a riding mower, and (i) sundry tools. The decree set apart to Janet, as her separate property, the 40 acres she purchased in Shannon County prior to the marriage.

In regard to marital property, the decree awarded John (a) a 1979 Cadillac valued at $3,000, (b) a 1948 Jeep valued at $300, and (c) a lawn mower valued at $400. The decree then stated, "[Janet] and [John] are each awarded all other properties in their respective possession."

The child, as noted earlier, was placed in John's custody, subject to the following provision:

"Until said child shall commence school, [Janet] shall have visitation on the third week of each month starting at 10:00 o'clock on Saturday morning until 10:00 o'clock on the following Saturday morning. In addition, she shall have visitation on the first weekend of each month from 10:00 a.m. on Saturday until 5:00 p.m. on Sunday. When said child shall commence school, she shall have visitation on the first and third weekends of each month, two 2-week periods each summer which may be separated by one week, at the election of [John]; and alternating the following holidays: Thanksgiving, Christmas, New Years, Easter, Memorial Day, 4th of July and Labor Day, commencing with Thanksgiving of the year in which said child shall start school. Holidays, as used herein, shall mean the legal holiday and the weekend associated with said holiday, commencing at 5:00 p.m. on the day before the first day of said holiday period and terminating on the last day of said holiday period at 5:00 p.m.

All costs of transporting the child to and from visitation shall be borne by [John], provided [Janet] continues to reside in Perry County, Missouri."

In challenging the award of alimony in gross, John maintains that Janet did not satisfy "the two-part statutory test" of § 452.335, RSMo 1978, which provides, in pertinent part:

"1. In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. ...."

John asserts that Janet owns the 40 acres set apart to her as her separate property, and that she also owns a 1976 Dodge Aspen automobile. In regard to that vehicle, Janet testified it was titled in her name and that she was driving it at time of trial.

We have scrutinized the decree, but find nothing therein assigning such vehicle to Janet, either as her separate property or as an item of marital property awarded to her. However, this omission is unmentioned in either party's brief. Consequently, we shall assume, without deciding, that the provision in the decree that each party is "awarded all other properties in their respective possession" is sufficient to divest John of any claim he might have to such vehicle.

John argues there was no evidence that Janet, at time of trial, was unable to support herself through appropriate employ-

ment. John reminds us that Janet had once earned $23,000 per year in St. Louis, and that she was earning $18,000 annually at her present job, which she had held since April, 1983. John adds that because he was awarded custody of the child, Janet is able to be employed full time.

Before appraising John's arguments, some preliminary observations should be made about alimony in gross.

Prior to January 1, 1974, the method of terminating a marriage through judicial action was by divorce. Chapter 452, RSMo 1969. Judicial authority to terminate a marriage by divorce was abolished by Laws 1973, pp. 470–79, H.B. No. 315, effective January 1, 1974, and a new procedure for terminating a marriage by a decree of dissolution of marriage was established by the same legislation. The statutes governing dissolution of marriage are presently codified as §§ 452.300–.420, RSMo 1978, as amended.

The 1973 legislation, however, did not repeal all of the statutes in Chapter 452, RSMo 1969. One of the statutes that survived is presently codified as § 452.080, RSMo 1978. It provides, in pertinent part:

"Upon a decree of divorce in favor of the wife, the court may, in its discretion, decree alimony in gross or from year to year. When alimony is decreed in gross, such decree shall be a general lien on the realty of the party against whom the decree may be rendered, as in the case of other judgments...."

D___ E___ W___ v. M___ W___, 552 S.W.2d 280, 283 (Mo.App.1977), held that by allowing § 452.080 to remain undisturbed in the 1973 legislation, the General Assembly "purposefully and appropriately retained gross awards in the dissolution of marriage statute." The same conclusion was reached in *Carr v. Carr,* 556 S.W.2d 511, 512[1] (Mo.App.1977), which affirmed a decree of dissolution of marriage awarding the wife maintenance in gross. *Accord: In re Marriage of Arnett,* 598 S.W.2d 166, 168[2, 3] (Mo.App.1980).

Both parties, in their briefs, assume that § 452.335, RSMo 1978, quoted in part *su-*

*pra,* which pertains to *maintenance,* establishes the criteria governing the award of "alimony in gross" in the instant case. We therefore proceed on that assumption, without deciding whether it is correct. Consideration of that question can await a case where it is raised.

Janet testified she had a "bachelor's degree" in English from St. Louis University, and that she had completed "about half" the requirements for a master's degree in that subject at that university. As we understand the testimony, Janet obtained custody of the child March 29, 1985, while the cause was awaiting trial, and retained custody from that date until the trial five months later.

At trial, Janet explained that her progress toward the master's degree was "on hold," as her time was filled by her job and by caring for the child.

In *Raines v. Raines,* 583 S.W.2d 564 (Mo.App.1979), the parties separated 18 months after their marriage. The ensuing decree of dissolution awarded the wife—in addition to child support for the parties' child, placed in her custody—"rehabilitative maintenance" of $25 per week for two years, the trial court having determined that no more than two years of partial support was necessary for the wife to gain sufficient training to support herself. The wife appealed, arguing, among other things, that her maintenance award should not have been limited to two years. Her contention was rejected, and the award was upheld.

In *Pederson v. Pederson,* 599 S.W.2d 51 (Mo.App.1980), the parties, who had no children, separated five years after their marriage. At time of trial, the wife was working part time, and was enrolled in nursing school, which would require 30 months to complete. The trial court awarded the wife rehabilitative maintenance of $60 per week, implying a finding that the nursing education was necessary for her to achieve the proper level of supportive ability. On appeal by the husband, the maintenance award, on which the trial court had placed

no time limitation, was modified so as to be limited to the period during which the wife was in nursing school. *Id.* at 54[6].

In the instant case, as we have noted, Janet once earned $23,000 per year in St. Louis. However, she lost that job and, according to John, the only time Janet worked thereafter while they lived together was as a "substitute teacher" in Bunker, "probably five or six days or something like that." John testified that Janet's only other income during the marriage was "unemployment." John added that Janet brought nothing into the marriage except "[h]er own clothes, some clothes and stuff like that."

It is inferable that the reason Janet established residence in Perryville after the final separation was that her mother lived there. Asked what arrangements she made for care of the child while she was at work, Janet replied: "I have two arrangements. One [sic] some occasions my mother will take care of him on maybe one, perhaps two days a week. And then the rest of the time Mrs. Brenda Barr, who has some children of her own and who babysits with some other children, takes care of him."

■ The trial court could have reasonably concluded that inasmuch as, after the decree, Janet would no longer be principal custodian of the child, she would have time to complete the requirements for her master's degree, and that rehabilitative maintenance, in the form of $4,000 alimony in gross, coupled with the income Janet could reasonably be expected to earn while completing those requirements, would make it financially possible for her to do so.

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The trial court's decree must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.; In re Marriage of Brewer*, 592 S.W.2d 529, 532[1] (Mo.App. 1979). The trial court has broad discretion in granting maintenance, and we should not interfere unless an abuse of discretion appears. *Brewer*, 592 S.W.2d at 532[2]; *In re Marriage of Galloway*, 547 S.W.2d 193, 195[2] (Mo.App.1977). The burden of demonstrating error in the trial court's judgment is upon the appellant. *Brewer*, 592 S.W.2d at 532[3]; *Naeger v. Naeger*, 542 S.W.2d 344, 346[3] (Mo.App.1976).

■ Neither John nor Janet requested the trial court to make findings of fact or conclusions of law, and the trial court made none. In such circumstances, all fact issues shall be considered as having been resolved in accordance with the result reached. Rule 73.01(a)(2), Missouri Rules of Civil Procedure (16th ed. 1985); *Montrose Savings Bank v. Landers*, 675 S.W.2d 668, 669[2] (Mo.App.1984); *Lohrmann v. Carter*, 657 S.W.2d 372, 376[1] (Mo.App. 1983). The judgment must be affirmed under any reasonable theory supported by the evidence. *Montrose Savings Bank*, 675 S.W.2d at 669[2]; *Elliott v. West*, 665 S.W.2d 683, 689–90[4] (Mo.App.1984).

Returning now to § 452.335, RSMo 1978, *supra*, it is evident that Janet, after the decree, lacked sufficient property, including marital property apportioned to her, to provide for her reasonable needs. § 452.-335.1(1). All she had, so far as the record shows, was her 40 acres in Shannon County, the 1976 Dodge Aspen, and her clothing and personal effects. There was no evidence that the 40 acres could provide, through rental or sharecropping, any income for her. She testified she paid about $7,500 for such land, and there was no evidence it had appreciated in value. Assuming such land could be sold for the amount she invested in it, the interest that could be earned from such sum would not support Janet. It was therefore obvious that Janet, in order to provide for her reasonable needs, would have to be gainfully employed.

*Hurley v. Hurley*, 607 S.W.2d 169, 170 (Mo.App.1980), cited, ironically, by John, notes that rehabilitative maintenance has been granted in situations where the spouse seeking maintenance requires fur-

ther education or training to be able to support herself. In that regard, it will be recalled that § 452.335.1(2), *supra*, in setting forth the guidelines for maintenance awards, refers to a spouse's inability to support himself (or herself) through *appropriate* employment. The trial court in the instant case, from the evidence before it, could have found that appropriate employment for Janet, given the fact that she was already halfway to her master's degree, and had some 20 working years left, would be employment in which a master's degree was a prerequisite. *Pederson*, as we have noted, approved rehabilitative maintenance enabling the recipient spouse to achieve the proper level of supportive ability, even though the evidence failed to conclusively show such spouse was unable to support herself. 599 S.W.2d at 53[3].

We acknowledge that John's arguments opposing the award of alimony in gross deserve careful consideration, and we concede that, on the record before us, the issue is extremely close. Nonetheless, confining our review within the limits heretofore set out, we cannot say that the award is unsupported by substantial evidence or is against the weight of the evidence, nor can we say that the trial court, in making the award, erroneously declared or applied the law.

■ John's first point is, accordingly, denied. In denying it, we do not overlook John's contention that the effect of the alimony order is to award Janet "the better part of [John's] cash savings." That argument, in our view, is unpersuasive. We perceive no reason why John cannot borrow against his savings to satisfy the alimony award, then repay the loan as his income permits.

■ John's second assignment of error maintains that the trial court erred in failing to order Janet to pay him "a reasonable amount for the support of her child." John reminds us that § 452.340, RSMo 1978, authorizes the trial court, in a dissolution proceeding, to order a parent owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for

such child's support. John insists that several of the factors enumerated in that statute, applied to the facts before us, compel the conclusion that child support should have been required of Janet.

Section 452.310, RSMo 1978, provides, in pertinent part:

" . . .

2. The petition in a proceeding for dissolution of marriage ... shall set forth:

.        .        .        .        .

(6) The relief sought.

. . . ."

John's petition, while praying for custody of the child, contained no request that the trial court order Janet to pay child support. We are mindful, of course, that when issues not raised by the pleadings are tried by consent of the parties, they are treated as if they had been pleaded, and the failure to amend to conform to the proof, if not formally requested and made, is presumed and will not affect the trial of the issues. Rule 55.33(b), Missouri Rules of Civil Procedure (16th ed. 1985); *Murphy v. Murphy*, 536 S.W.2d 951, 952–53[2] (Mo.App. 1976). Thus, had the issue of child support been tried by consent, John's failure to pray for it in his petition would not have been fatal.

However, nowhere in the transcript is there any request by John for child support, and the record is void of evidence regarding the amount reasonable or necessary to provide for the child's needs.

Before a court may award an amount sufficient to meet a child's needs according to the child's station in life there must be sufficient evidence adduced as to the cost of providing such needs. *Gambino v. Gambino*, 636 S.W.2d 81, 82[4] (Mo.App. 1982); *McNulty v. Heitman*, 600 S.W.2d 168, 173–74[17] (Mo.App.1980). While it is impossible to determine this sum with absolute accuracy, there must be sufficient evidence so that the trial court may intelligently arrive at a sum which would approximate the amount necessary to meet the

needs of the child. *McNulty*, 600 S.W.2d at 174.

Inasmuch as John completely ignored the subject of child support at trial, he cannot now indict the trial court for error in awarding him none.

It must also be remembered that John will not be furnishing all the support for the child. Until the child commences school, Janet will have him nine days each month, during which she will presumably supply his food, shelter and other needs. After the child commences school, Janet will have him two weekends each month and four weeks each summer, plus alternating holidays.

John's second point is meritless.

John's final point asserts the trial court erred in awarding Janet $750 in attorney fees, in that John and Janet "have roughly equal incomes," and John has custody of the child, a $4,000 alimony in gross obligation, and no child support coming from Janet.

Section 452.355, RSMo 1978, provides, in pertinent part:

"The court ... after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of ... defending any proceeding under sections 452.300 to 452.415 and for attorney's fees...."

John, as we understand his argument, does not contend that Janet's attorney did not earn a $750 fee; John simply maintains he should not be the one to pay it.

It is well settled that the trial court is an expert on the issue of attorneys' fees and is given wide latitude in allocating them. *Mills v. Mills*, 663 S.W.2d 369, 374[12] (Mo. App.1983); *Flach v. Flach*, 645 S.W.2d 718, 722[9] (Mo.App.1982). Such awards should not be disturbed unless there is a manifest abuse of discretion. *Mills*, 663 S.W.2d at 374[12]; *Bray v. Bray*, 629 S.W.2d 658, 660[2] (Mo.App.1982).

The record before us fails to demonstrate an abuse of discretion. While the annual incomes of John and Janet were essentially equal, John's assets substantially exceeded Janet's. His home, so far as we can determine from the record, was paid for, as was all of his land. At time of trial, John had some $8,400 on deposit.

Although Janet owned 40 acres of land, it was evidently unimproved, and she was living in rented quarters at time of trial. Additionally, marital property found by the trial court to be worth $3,700, in the aggregate, was awarded to John. There is no evidence that Janet was awarded marital property of any significant value.

Weighing the above factors, we cannot convict the trial court of abusing its discretion in awarding Janet the $750 attorney fee.

We turn now to Janet's appeal, recalling that the decree was entered October 8, 1985. According to the "docket sheet," Janet, on October 22, 1985, filed a motion to set aside the decree and to reopen her case for submission of additional evidence. That motion was heard by the trial court November 12, 1985. Two days later, on November 14, the trial court denied the motion. Janet's notice of appeal was filed in the trial court Tuesday, November 26, 1985.[1]

Rule 81.04(a), Missouri Rules of Civil Procedure (16th ed. 1985), provides that no appeal shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment appealed from becomes final. Rule 81.05(a) provides that in the event an authorized after-trial motion is timely filed, the judgment becomes final at the expiration of 90 days after the filing of such motion or, if such motion is passed on at an earlier date, then at the date of disposition of said motion.

As Janet's after-trial motion was denied November 14, 1985, the deadline for

---

1. Janet's notice of appeal was filed by the attorney who represented her at trial. That attorney is not counsel for Janet on appeal.

her notice of appeal was Monday, November 25, 1985 (the final day of the ten-day period having been Sunday, November 24, 1985, the deadline was extended to Monday, November 25 by Rule 44.01(a)).[2]

The timely filing of a notice of appeal is jurisdictional. *Goldberg v. Mos*, 631 S.W.2d 342, 345[2] (Mo.1982). If the notice of appeal is untimely, we do not acquire appellate jurisdiction. *Watkins v. Watkins*, 556 S.W.2d 215[2] (Mo.App.1977); *Kuhn v. Bunch*, 529 S.W.2d 200–01[1] (Mo.App.1975).

As Janet's notice of appeal was untimely, we are without jurisdiction to entertain her appeal; consequently, it is ordered dismissed. As we have found no merit in John's assignments of error, the judgment is affirmed.

GREENE, P.J., and TITUS, J., concur.

**2.** An alert reader might wonder whether Janet's notice of appeal could be considered timely by reason of Rule 81.04(b), which provides that if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date the first notice of appeal was filed. When, one might ask, did John file his notice of appeal? The answer is that John filed his notice of appeal prematurely, on October 17, 1985. Rule 81.05(b) provides that where a notice of appeal is filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal. That date, as we have learned, was November 14, 1985. Whether, under Rule 81.05(b), John's notice of appeal should be deemed filed November 14, 1985, or November 15, 1985, is an issue we need not decide, as Janet's notice of appeal was untimely even if John's notice were considered filed as of November 15, 1985.