Joan **WYNN**, Petitioner-Respondent,

v.

Donald **WYNN**, Respondent-Appellant.

No. 52435.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 20, 1987.

Mark Kruger, Clayton, for respondent-appellant.

W. Morris Taylor, Clayton, for petitioner-respondent.

CRANDALL, Judge.

Donald Wynn (husband) appeals from a decree of dissolution of marriage from Joan Wynn (wife). We affirm in part and reverse in part.

Husband and wife were married in September 1973 and separated in January 1985. During the marriage, husband was employed primarily as a salesman. His yearly income was approximately $30,000. Wife was also employed outside of the home as a temporary office worker. Her annual income was over $20,000. There were two children born of the marriage. They were five and eight years of age at the time of dissolution. They had attended the same private school since they were in preschool.

In 1984, husband purchased a 10 percent ownership in the company for which he worked. To accomplish this, husband and wife borrowed $40,000, signing a note and second deed of trust on their home for that amount. The marital home was valued at $130,000. Husband used $30,000 to purchase stock and loaned the company $10,000, receiving a note from the company for that amount.

At the time of this transaction, husband and wife were experiencing marital difficulty. They executed a "Waiver" which provided in pertinent part:

1. For and in consideration of Wife consenting to a certain loan on the parties' residence at 15991 Meadow Oak Drive, Chesterfield, Missouri 63017, husband hereby agrees that in the event a petition for dissolution of marriage is filed within the next two years from the date of this agreement, that he will make no additional claim on any of the equity in said real estate, as and for marital property, and that he will further agree that if a petition for dissolution is filed within said two year period, he will waive any and all equity in said residence.

2. Wife hereby agrees that she will, if a petition for dissolution of marriage is filed within the next two years, not make any claim against any stock ownership of Husband in Prestige Auto Sound, Inc. as and for marital property.

3. Wife and Husband both agree that in the event of a petition for dissolution being filed within the next two years of the date of this agreement, that any and all notes payable by Prestige Auto Sound, Inc. to Husband and Wife shall be transferred to Wife, with Husband making no claim that same is marital property.

At the time of trial, husband's stock in the company was worthless.

Shortly after the separation, husband's company experienced financial difficulty and husband lost his job. He was unemployed for about one year. He received job offers during that time, but held out for a "good job." He lived with his girlfriend who helped support him. He also collected unemployment compensation and worked for his brother as a bartender, allegedly for no salary. He did not, however, pay any child support or make any payments on the first mortgage pursuant to a pendente lite order. He was $11,295 in arrears on these payments at the time of trial.

While he was, by his testimony, without income, husband secreted money away in two bank accounts. In addition, he re-

ceived and kept for himself over $1,650 in payments from his company on the $10,000 note. He also charged debts against the note. As a result, the note was devalued to $6,500. At the time of trial, he had just completed a training program to sell insurance, but was receiving no salary.

The decree divided the marital property and debts as follows:

TO WIFE

| PROPERTY | VALUATION |
| --- | --- |
| Personal property | — * |
| Marital home | $130,000 |
| Jewelry | 9,550 |
| 1981 Oldsmobile | — * |
| Bank Account | 25 |
| | $139,575 |

| DEBTS | |
| --- | --- |
| First deed of trust on house | $ 61,383 |
| Debt on Oldsmobile | 3,083 |
| One-half of certain debts | 3,186 |
| | $ 67,652 |

TO HUSBAND

| PROPERTY | VALUATION |
| --- | --- |
| Personal and furniture | $ — * |
| Personal property | 3,600 |
| Bank Account | 316 |
| Insurance policy | 22 |
| $10,000 Note | 0 |
| Stock of company | 0 |
| | $ 3,938 |

| DEBTS | |
| --- | --- |
| Second Mortgage | $ 40,000 |
| One-half of certain debts | 3,186 |
| Dental bill | 196 |
| | $ 43,382 |

*— Indicates that the court placed no valuation on this item. _____

Primary custody and child support of $200 per month per child were awarded to wife. The court also ordered husband to pay a portion of wife's attorney's fees in the amount of $4,100 and to maintain a life insurance policy of $100,000 with his minor children designated as beneficiaries of the proceeds.

In his first point, husband claims that the trial court erred in ordering him to pay the second mortgage on the marital home and in awarding him the note payable by his company because such orders contravened the express terms of the Waiver signed by both parties.

The Waiver does not explicitly refer to the repayment of the note and second deed of trust on the marital home. Paragraph 1 of the Waiver states that husband "will make *no additional* claim on any of the equity ... [and] will waive *any and all* equity in said residence." (emphasis added). The wording of the agreement appears ambiguous since it is reasonably susceptive of different constructions. *See, e.g., Berman v. Berman*, 701 S.W.2d 781, 788 (Mo.App.1985).

To give construction to an ambiguous contract which will reflect the parties' intent, the court can consider extrinsic evidence, including the circumstances surrounding the execution of the contract and the interpretation given to the contract by the parties. *Wilson v. Bob Wood & Assoc., Inc.*, 633 S.W.2d 738, 747 (Mo.App.1981); *Berman, Id.* The extrinsic evidence, however, may not vary or contradict the terms of the contract. *Wilson*, 633 S.W.2d at 748.

Here, each party testified, without objection, concerning their intent in drafting the Waiver and each interpreted Paragraph 1 differently. By failing to object to the parole evidence, the parties tacitly conceded an ambiguity. Wife stated that the intent of the Paragraph 1 was to give the house and the responsibility for the repayment of the first mortgage to her and to give the responsibility for repaying the second mortgage to husband. In return for wife's waiving any interest in husband's stock (Paragraph 2), husband waived any interest in the equity in the marital home. Husband testified as follows:

> At that time, we felt that half of the equity was mine, and half of the equity was [wife's]; and that, if I chose to get into the business venture and procure monies with a second deed on the house, that that $40,000 that was half mine would be used as the loan for the second.

On appeal, husband contends that the language of the agreement supports the proposition that wife was responsible for repaying the note and second deed of trust on the house.

The trial court found that "the intention of the parties when they took out a second mortgage on the home was that [husband] should bear the expense of said mortgage as he was to benefit from any appreciation in the stock." Obviously, the trial court believed wife's testimony and rejected husband's testimony. As trier of fact, it is the function, indeed the duty, of the trial court to decide the weight and value to be given to the testimony of any witness. On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence. *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App.1983). We defer to the trial court even if the evidence could support a different conclusion. *Id.*

Husband borrowed $40,000 against the equity in the marital home to invest in a business. We assume that he believed that the company would prosper and that the stock would increase in value. As consideration for wife's signing a second deed of trust which encumbered the family home, husband gave up any right to the equity of that home and wife gave up any claim on husband's stock, no matter how much either the stock or the home increased in value. Husband got the immediate benefit of having the money to buy into a business and wife incurred an additional liability on the promise that husband would repay the loan in the future. In light of the fact that husband made the decision as to the use of the $40,000 loan proceeds, he cannot now complain that the stock he purchased with that money is worthless. *See, e.g., Mills v. Mills*, 663 S.W.2d 369, 373 (Mo.App.1983).

It is also necessary to analyze what the wife was actually awarded as marital property. Wife did not receive $40,000 in cash and husband did not pay out $40,000. Wife has actually received as a marital asset the family home which is encumbered by an additional $40,000 debt. This debt is not reflected in the distribution to wife. Although the court has ordered husband to pay the mortgage, husband has not always complied with previous court orders. In the event that husband dies or fails to

make payments on the second mortgage, wife will be required to make the payments or risk losing her home. The second mortgage also virtually eliminates wife's ability to borrow on the equity in the house either for home repairs or for other necessities. Further, in the event that the house is sold or destroyed, the lender on the second deed of trust will look to the sale or insurance proceeds for payment. Thus, the net value of the marital property awarded to wife is, to the extent of $40,000, questionable. We conclude that the trial court's construction of the Waiver regarding the second deed of trust was supported by substantial evidence.

In the second part of his first point, husband challenges the trial court's award to him of the $10,000 note payable from his company. Paragraph 3 of the Waiver expressly provides, in the event that a petition of dissolution is filed within two years after the agreement, the note is to be "transferred to wife, with husband making no claim that same is marital property." Husband contends that the trial court "ignored the plain language" of the Waiver in awarding him the note.

We agree that awarding the $10,000 note to husband contradicted the express terms of the written agreement. The trial court found that the fair market value of the note was zero because "[t]he likelihood of the balance of the note being paid to the parties [was] dubious." Given the fact that the note had no value, awarding the note to husband was harmless error. Husband's first point is denied.

In his second point, husband contends that the trial court erred in dividing the marital property because wife was awarded a disproportionate share of the marital assets. This point is rendered moot by our holding in Point I that the purpose of the Waiver was to ensure that wife would receive the marital home and that husband would assume the obligation to repay the second mortgage on that home. Husband's second point is denied.

In his third point, husband challenges as excessive the trial court's award of $200 per month per child in child support to wife. Husband argues that the court ignored wife's earning capacity and failed to consider his employment situation at the time of trial in which he was earning no income. He also questions the sufficiency of the evidence about the financial needs of the children.

An order for child support is to be made in conformity with Section 452.340 RSMo (1986) which prescribes the factors to be considered in determining "an amount reasonable or necessary" for the support of the children. Determination of the proper amount to be paid by husband requires a balancing between the needs of his children and his ability to pay. *Furney v. Steele*, 564 S.W.2d 610, 612 (Mo.App. 1978). The court is directed to consider the standard of living established in the marriage. *See* Section 452.340(4). The court may also consider husband's past as well as present income. *Tatham v. Tatham*, 657 S.W.2d 717, 719 (Mo.App.1983). Husband may not escape his responsibility to his family by deliberately limiting his work to reduce his income. *Butler v. Butler*, 562 S.W.2d 685, 687 (Mo.App.1977).

The court found that it was in the children's best interest to continue their education at the private school "in keeping with the educational standard established during the course of the marriage." Wife testified that she would pay the yearly tuition of $1,600 per child out of her child support payments. She requested a total of $500 per month in child support. There was evidence of wife's present income and financial situation in the record.

Admittedly, the precise needs of the children and the exact amounts required to meet those needs are not enumerated in the record. The total amount of $400 per month awarded in child support, however, can easily be substantiated by the scant evidence of the needs of the children before the court. Obviously, the smaller the amount of the award, the smaller the quantum of proof necessary to justify the award.

Husband's argument that his lack of income at the time of trial was not con-

sidered by the trial court is also without merit. When he was not working, husband collected unemployment compensation. The trial court found that he tended bar for up to 40 hours per week for an "undetermined salary." Although he was not earning any money at the time of trial, the trial court imputed income to husband based upon his past earnings, which had been approximately $30,000 per year.

In addition, the trial court could reasonably infer that husband attempted to reduce and conceal income. Here, while being supported by his girlfriend, husband turned down job offers. He also denied receiving any remuneration for tending bar. The award of child support to wife is clearly supported by the evidence. Husband's third point is denied.

■ In his fourth point, husband claims the trial court erred in ordering him to pay a portion of wife's attorney's fees. Husband again contends that the trial court failed to consider his inability to pay. The award of attorney's fees is a matter resting in the sound discretion of the trial court. *Butler*, 562 S.W.2d at 688. In view of our discussion under Point III regarding husband's earning capacity, we find no abuse of the trial court's discretion in awarding a portion of wife's attorney's fees to her. Husband's fourth point is denied.

■ In his final point, husband alleges that the trial court erred in ordering him to designate his children as beneficiaries of a life insurance policy. In *Metropolitan Life Ins. Co. v. Alcorn*, 674 S.W.2d 115 (Mo. App.1984), this court stated:

> A parent in Missouri is not required to support his children after the parent dies. Life insurance is seen as equivalent to such posthumous support, and is therefore beyond the court's power to order, although it could perhaps constitute a part of a separation agreement. While it seems unreasonable, the circuit court cannot order the support of minor children through life insurance.

*Id.* at 115–116 (citations omitted).

To support the trial court's order that husband maintain a life insurance policy

for the benefit of his children, wife relies on *Fort v. Fort,* 670 S.W.2d 173 (Mo.App. 1984). That case, however, is distinguishable from the case before us in that, in *Fort,* any error in naming a child as beneficiary of an insurance policy was waived by husband's testimony on direct examination that he thought it "appropriate" to name the child as beneficiary of a reasonable amount of life insurance. *Id.* at 175. The trial court erred in ordering husband to name his children as beneficiaries of his life insurance policy.

That portion of the decree naming the children as beneficiaries of a life insurance policy is reversed. In all other respects the decree is affirmed.

SIMON, P.J., and GRIMM, J., concur.