Antoinette RUSSO, Appellant,

v.

Joseph RUSSO, Respondent.

No. 54366.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 22, 1988.

Tammi A. Milligan, St. Louis, for appellant.

Isaac E. Young, St. Louis, for respondent.

SIMON, Judge.

Antoinette Russo, wife, appeals from a decree dissolving her marriage to Joseph Russo, husband, and dividing the marital property, awarding her $300 per month rehabilitative maintenance for two years, and awarding her attorney's fees. On appeal, wife contends that the trial court erred in: (1) determining the amount and duration of maintenance; (2) failing to allocate the existing mortgage on the marital home; and (3) dividing the marital property. We affirm.

The parties were married on November 26, 1960. The parties' final separation occurred February 10, 1985. Four sons were

born of the marriage; all of whom the trial court found to be emancipated at the time the decree was entered. The couple had lived in the marital home for twenty-two years of their twenty-seven year marriage. The marital home is subject to an existing mortgage of $16,800. Wife continues to reside at the home, and husband has moved to an apartment.

At the time of the hearing, wife was forty-seven years old. She testified that she is in fair health, and that her last visit to a doctor was approximately eight years ago. She presented no medical evidence indicating any inability to work.

Wife is a high school graduate. Her varied work history consists of working for Southwestern Bell for approximately five years in which she attained the job level of "keypunch operator," as a snack bar salesperson at a discount store, and as a nurse's aide. Additionally, wife worked in her husband's business, J. Russo Cement Contractors, Inc., for approximately fifteen years. Her duties consisted of general bookkeeping work which included handling cash disbursements, cash receipts, bank deposits, making out contracts, payroll checks, employment withholding forms, social security forms, and billings. Following the filing of her Petition for Dissolution of Marriage on February 5, 1985, wife has unsuccessfully sought various employment positions and has only been able to obtain several housecleaning jobs. In 1986, wife's gross income was $1000.

Wife characterized her job skills as being in the field of accounting, and stated that she wanted to enroll in a two-year, $9120 training course to sharpen her skills. After completion of the course, she felt that she would be able to earn enough money to support herself.

Stanley J. Bryer, a vocational counselor and consultant, testified on behalf of husband as to wife's training and employment possibilities. Wife stipulated that Bryer was an expert witness. Bryer testified that a person with wife's work experience had high employment potential in two job areas: (1) data entry; and (2) bookkeeping/clerical. According to Bryer, St. Louis presently has a relatively high demand for data entry jobs. He testified that training courses to pursue a job in one of those areas generally last a maximum of six months in duration and cost less than $3000 for the data entry course and less than $5000 for the bookkeeping course in the schools he surveyed. Bryer cited several schools where wife could get this type of training. Wife presented no testimony to rebut Bryer as to why she could not be adequately trained for employment through one of these six month programs, nor any evidence to dispute Bryer's cost figures.

Husband has an eighth grade education and is the sole shareholder and president of his corporation, J. Russo Cement Contractors, Inc., which is a small, two-employee business. The cement business operates from March to November each year and handles mainly small contracting jobs. The nature of the cement business prevents him from operating during the winter months. He has no large mixing equipment.

Husband testified that he inherited approximately $22,000 from his mother which was used to pay off the mortgage on the marital home. The present mortgage of $16,800 was placed on the marital home to purchase the building used in the cement business which was valued at $85,000.

Husband testified that his net pay is $263.12 per week, and that his expenses are almost double his income. If any surplus capital exists in the corporation, husband retains it as rental income to supplement his weekly salary. Over the last few years, however, the capital in the corporation has declined from approximately $22,000 in 1985 to $11,000 in 1987 and is expected to drop down to $7,000–$8,000. Husband stated that he normally needs $8,000–$10,000 in capital to operate his business.

Evidence of marital misconduct was presented to the trial court. Wife testified that she had struck husband on the head with a glass. Husband stated that wife drank hard liquor and eight to ten beers daily for approximately eight to ten years prior to the parties' separation, and that he had found beer bottles, beer cans, and

whiskey bottles underneath the mattresses in the children's rooms and in the vegetable bin. Husband also stated that wife refused to occupy the marital bedroom for four to five months at a time. Both parties testified to the use of profanity by the other.

In its decree of dissolution, the trial court awarded the marital home to the wife and J. Russo Cement Contractors, Inc., to the husband. In addition, the trial court ordered husband to pay $300 a month rehabilitative maintenance for two years and wife's attorney's fees.

Initially we note that the standard of review to be applied in a court-tried case is that "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). In *Wynn v. Wynn,* 738 S.W.2d 915 (Mo.App. 1987), this court stated that:

As trier of fact, it is the function, indeed the duty, of the trial court to decide the weight and value to be given to the testimony of any witness. On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence. *Ware v. Ware,* 647 S.W.2d 582, 584 (Mo.App.1983). We defer to the trial court even if the evidence could support a different conclusion. *Id.*

*Wynn,* 738 S.W.2d at 918[1].

In her first point on appeal, wife contends that the trial court abused its discretion in determining the amount and duration of rehabilitative maintenance. Specifically, wife asserts that the amount of $300 per month was grossly inadequate and failed to take into account the evidence as applied to the statutory factors set out in § 452.335 RSMo (1986). Additionally, she asserts that the time limitation of two years was based on mere speculation rather than an evidentiary basis of change of financial conditions as required by § 452.335 RSMo (1986). (All further statutory references shall be to RSMo (1986) unless otherwise indicated). Further, wife argues that husband presented no evidence showing any reasonable expectation that there would be an impending change in wife's financial condition, and that the trial court made no findings upon which to base the amount or limitation of the maintenance award.

 However, the following discussion occurred between wife's counsel and the trial court:

COUNSEL: Judge, neither [husband's counsel] and I have requested any findings of facts. Would the Court want us to do that?

COURT: Do you want to do that?

COUNSEL: We don't really want to. We feel it's fresh enough in the Court's mind, it wouldn't really add anything.

Under these circumstances, "all fact issues shall be considered as having been resolved in accordance with the result reached." *In re Marriage of Clark,* 718 S.W.2d 649, 653[2] (Mo.App.1986). "The judgment must be affirmed under any reasonable theory supported by the evidence." *Id.* "The trial court is empowered with a considerable degree of discretion when determining the amount and the duration of maintenance payments and will not be overturned unless the trial court abused its discretion." *Russell v. Russell,* 740 S.W.2d 672, 674[2] (Mo.App.1987). "The trial court's order limiting the duration of plaintiff's maintenance must stand so long as the order is based on an evidentiary basis of some impending change of financial conditions of the parties and not upon mere speculation." *Id.* at 674[1]. There must be evidence or a reasonable probability that maintenance will not be needed upon termination. *Newman v. Newman,* 717 S.W.2d 568, 569[1] (Mo.App.1986). Also, "wife has an affirmative duty to seek full-time employment. *In re Marriage of Goodding,* 677 S.W.2d 332, 337[4] (Mo.App.1984). And, husband should not always have to wait and seek modification when wife accepts a job and becomes self-sufficient." *Newman,* 717 S.W.2d at 569[1]. Rather,

"[i]f there is *any rational basis* to support the determination of future self-sufficiency, the order of limited duration maintenance should be affirmed." *Id.* at 570[1] (emphasis added).

In *Russell*, this court approved a limited duration maintenance award of seven years for a wife who had been married thirty-three years and who only had an eighth grade education. During most of the marriage, the wife had not been employed outside the home except for some sporadic part-time work. *Id.* at 673. This court found a rational basis to support the limited maintenance in that the wife had testified that she was capable of working full time, all the children of the marriage were emancipated, and no medical problems impaired her working ability. We found no cognizable reason preventing the wife from becoming self-supporting within the stated time frame. *Id.* 674[3].

■ Similarly in this case, all of wife's children are emancipated, and wife introduced no medical evidence demonstrating any inability to work. Unlike *Russell*, wife has more education and fifteen to twenty years of work experience including five years at Southwestern Bell, fifteen years doing bookkeeping work at her husband's business, and other odd jobs. Wife stated that she thought she could become self-supporting after taking a two-year training course. Expert testimony by Stanley J. Bryer confirmed this stating, however, that wife could become adequately trained after taking one of several courses lasting a maximum of only six months duration. This evidence sufficiently establishes a rational basis to support the determination of future self-sufficiency.

■ Substantial evidence also exists supporting the amount of maintenance. Husband testified that his net income was $263.12 per week, and that his expenses exceeded his income. Husband supplements his income by receiving rent from his corporation, but only when surplus capital exists. The amount of capital has recently declined and is expected to continue to decline to approximately $7000–$8000 while he stated he needs $8000–$10,000 to operate his business. Wife's current income comes solely from her housecleaning jobs which grossed $1000 in 1986. Bryer stated that the rehabilitative education wife seeks would cost less than $3000 for the data entry course and less than $5000 for the bookkeeping course. The $300 monthly maintenance husband would pay for two years would total $7200. We conclude that the trial court did not abuse its discretion in setting the amount and duration of maintenance.

■ In her second point, wife contends that the trial court abused its discretion by failing to allocate the mortgage on the marital home in that such failure makes the division of property and award of maintenance to wife fundamentally unfair and creates possible future litigation. Appraisals of the marital home estimated the value to be somewhere between $74,000 and $80,000. At the time of dissolution the marital home was subject to an existing mortgage of $16,800 with monthly payments of $198. The trial court did not allocate this debt when it divided the marital property.

Wife argues that the mortgage reduces the value of her marital property by 8% and that to prevent foreclosure, she will have to use approximately two-thirds of her maintenance award to meet the mortgage payments. "Debts incurred by the parties during marriage are not marital property subject to division under § 452.330." *Golleher v. Golleher,* 697 S.W.2d 547, 549[3, 4] (Mo.App.1985). It is a better practice to distribute the marital debts to alleviate future dissension, but the trial court is under no duty to do so. *Id.* Here, we presume that the trial court considered whether marital debts existed as well as the extent of marital indebtedness in arriving at its division of marital property. *Id.* at 549–50[3, 4]. Although sympathetic to wife's argument, we conclude that the trial court did not abuse its discretion. Further, in wife's final point, we shall review the distribution of the marital property.

In her final point, wife contends that the trial court abused its discretion in dividing the marital property in that such division

was not supported by substantial evidence as applied to the statutory factors set out in § 452.330. In dividing marital property, § 452.330 requires the trial court to consider all relevant factors including: (1) the contribution of each spouse to the acquisition of the marital property, including contributions of a spouse as a homemaker; (2) the value of property set apart to each spouse; (3) the economic circumstances of each spouse at the time the division of property is to become effective; and (4) the conduct of the parties during the marriage.

In *Mills v. Mills*, 663 S.W.2d 369 (Mo. App.1983) this court stated that:

> The trial court is vested with considerable discretion in dividing the marital property. It is not required to make an equal division of the marital property, only a just division. *Calia v. Calia*, 624 S.W.2d 870 (Mo.App.1981). On appeal, the party challenging the division of marital property has the burden of overcoming the presumption of correctness of the order prescribing such division. *Rasmussen v. Rasmussen*, 627 S.W.2d 117 (Mo.App.1982). An appellate court will only interfere if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of judicial discretion. *Metts v. Metts*, 625 S.W.2d 896, 899 (Mo.App.1981).

*Id.* at 372[6–8].

A thorough review of the record reveals no division so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. We presume that the trial court considered all the evidence in dividing the marital property. *Russell*, 740 S.W.2d at 674[4, 5]. The parties had been married for twenty-seven years, and each had contributed to the acquisition of the two main marital assets, the marital home and the cement business. Each was awarded their separate items of personalty. Wife testified that her last ascertainable gross income was $1000 in 1986. Husband's 1985 gross income was $28,883.37. Evidence was presented by both wife and husband as to wife's marital misconduct. At the conclusion of the hearings, the following discussion occurred between the court and the counsel for the parties:

> COURT: The question is it's still not too late for these two to work something out; otherwise, everything is going to have to be sold and divided.
>
> WIFE'S COUNSEL: Whatever the Court feels is the proper thing to do.
>
> HUSBAND'S COUNSEL: We would hope that there would be some offsets, your Honor, rather than have everything sold. We would like to keep his business at least intact and his—and to sell his business and business assets would be a hardship on both of them. So, we would—our proposal would be that there would be some—he would be allowed to keep his business intact, which would be the tools of his trade and warehouse, and the Court would make some offsets in favor of Mrs. Russo to compensate for that.
>
> COURT: Which is the marital home.
>
> HUSBAND'S COUNSEL: Basically.
>
> WIFE'S COUNSEL: That's the only asset.
>
> HUSBAND'S COUNSEL: Whatever else there may be, obviously the Court would divide or sell or however the Court deems fit.
>
> COURT: Okay. I'll take that as an offset.
>
> WIFE'S COUNSEL: I'm not proposing anything. Maybe now I should, but I'm just willing to let it fall. It's fresh in the Court's mind. It's not like we've tried this piecemeal over a six-month period.
>
> HUSBAND'S COUNSEL: That's our only concern is to maintain Mr. Russo in business so that he can earn an income.
>
> WIFE'S COUNSEL: I quite honestly would say I think he should....

The trial court awarded wife the marital home, husband the cement business, and divided the remaining personalty. No specific values were assigned to the

marital property. We have consistently held that absent a specific request for findings under Rule 73.01(a)(2), the trial court is not required to assign a value to each item of property. *Dardick v. Dardick,* 670 S.W.2d 865, 868[2] (Mo. banc 1984). Where no findings of fact have been requested or made, we presume the facts on appeal have been found in accordance with the judgment. *Id.* We cannot say that the trial court abused its discretion in dividing the marital property.

JUDGMENT AFFIRMED.

DOWD, P.J., and SIMEONE, Senior Judge, concur.