**Diane F. IKONOMOU, Appellant,**

v.

**Demetre IKONOMOU, Respondent.**

**No. 55125.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 5, 1989.

Mark Howard Kruger, Clayton, for appellant.

Merle L. Silverstein, Harry Charles, Rosenblum, Goldenhersh, Silverstein & Zofft, Clayton, for respondent.

SIMON, Chief Judge.

Diane F. Ikonomou, Wife, appeals from a decree of dissolution of her marriage to Demetre Ikonomou, Husband.

Wife contends that the court erred in: (1) awarding custody of the three minor female children to Husband, because the best interests of said children require that their custody be awarded to her; (2) valuing and distributing the marital assets because the values and distribution are inequitable and are unduly weighted in favor of Husband; and (3) improperly adopting, verbatim, Husband's proposed decree of dissolution because the adoption of a party's decree is inconsistent with established Missouri law. We affirm.

Our standard of review of a dissolution proceeding is well established. We shall affirm the trial court's decree if it is supported by substantial evidence, is not against the weight of the evidence, and the trial court correctly declared and applied the law. We should exercise the power to set aside a decree as against the weight of the evidence with caution and with a firm belief that the decree is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). Here, the trial court did not make findings of facts or conclusions of law, thus, all facts are deemed found in accordance with the result reached. *Ellis v. Ellis*, 747 S.W.2d 711, 714[1–4] (Mo.App. 1988). As trier of fact, it is the duty of the trial court to decide the weight and value to be given to the testimony of any witness. *Wynn v. Wynn*, 738 S.W.2d 915, 918[1] (Mo.App.1987). On appeal, we view the

evidence in a manner favorable to the decree and disregard contrary evidence. We defer to the trial court even if the evidence could support a different conclusion. *Id.*

Pursuant to these principles, we shall set forth a brief statement of facts. Additional facts will be presented in our discussion of Wife's points on appeal. Wife and Husband were married on July 18, 1970. Four children were born of their marriage: John, born February 15, 1971; Anastasia, June 10, 1975; Katrina, April 6, 1978; and Elizabeth, December 9, 1981.

Wife left Husband several times during the marriage, and on September 9, 1986, the date of her final departure, Wife filed her petition for dissolution of marriage.

When the parties separated for the final time, Wife took her three daughters and left the son with Husband. At a *pendente lite* hearing on February 5, 1987, the trial court awarded temporary custody of the daughters to Wife and custody of the son to Husband. This order remained in effect until the entry of the decree of dissolution on June 21, 1988, at which time the trial court awarded custody of the four children to Husband. The trial court divided the marital property, awarding the home to Husband, and ordering him to execute a $30,000.00 promissory note to Wife representing her interest in the home. The trial court found that Husband's tailor business had no sale value, thus Wife received no interest in the business.

■ In her first point, Wife contends that the trial court erred in awarding custody of the three daughters to Husband, because that order is not supported by substantial evidence, and the weight of the evidence and the best interests of the daughters require that Wife receive custody.

In the matter of determining child custody, the trial court is vested with broad discretion. *In re Marriage of Mihalovich,* 659 S.W.2d 798, 801[2, 4] (Mo.App.1983). When a determination of custody is to be made, the ultimate test is that of what is in the best interest of the child. Upon review of the trial court's actions, we presume that the court examined the evidence thoroughly and ordered what it believed to be in the best interests of the child. *Ellis,* 747 S.W.2d at 714[1–4].

Wife's contention rests heavily upon testimony from her expert witness, a psychologist, Dr. Wells Hively. Dr. Hively testified that he evaluated the girls and Wife on three occasions, and he concluded that Wife's home was best suited for the emotional and psychological development of the daughters. However, Dr. Hively conceded that the girls each expressed an important bond with their father; that they have affection for him, and they described happy things they do with him. Dr. Hively admitted that the fact that the girls had been separated from their father for over one year might be a contributing factor to their worry about living with him. He also stated that Wife has tendencies to be "a little on the hysterical side."

Additionally, Wife relies on testimony from her 12 year old daughter, Anastasia, who testified that she and her sisters preferred to live with Wife. While the wish of the child is a factor to be considered by the court, it is but one factor. It is not conclusive, but is to be weighed with all other relevant factors. *M v. M,* 688 S.W.2d 384, 385[1] (Mo.App.1985).

A family friend, testified that Wife was "always trying to pull the children to her side," that she would tell the children that she was the "nicest mother" and Husband was the "meanest father," and she always made Husband out to be the "monster of the family." The friend also said that Wife mocked Husband in front of the children and made fun of Husband's accent. Conduct of one parent which seeks to instill disrespect or destroy affection of the children for the other parent is strongly condemned and may be grounds for denying custody. *In re Marriage of J___ H___ M___,* 544 S.W.2d 582, 586[3, 4] (Mo.App. 1976).

In *Wells v. Wells,* 117 S.W.2d 700, 705[16] (Mo.App.1938), the court concluded that the preference of a 12 year old girl to be in the custody of the father should not be used as a guide in determining to which

of the parents her custody should be awarded, where the father had pampered the child and had from time to time at-tempted to embitter the child against her mother. Also, in *McBride v. McBride*, 579 S.W.2d 388, 390[5] (Mo.App.1979), we rec-ognized that "children can be enticed by one parent from the other by many factors, including the desire of a child to get away from strong discipline. In considering the wishes of the child, it is important to ascer-tain and evaluate the basis for these wishes, so that the court can properly place this element in its proper perspective in deciding what is in the best interest of the child." *Id.* Here, as in *McBride*, the record reveals extensive conversation be-tween the trial court and Anastasia as to her past and present life. Anastasia testi-fied that she and her sisters do not like to be in their father's home because he shouts at them, there is nothing to do, and they do not like to "do the dishes." She said that she washes the dishes in her mother's home, but they use paper plates, so there are fewer dishes to wash.

■ Additional evidence includes testi-mony concerning Wife having had an extra-marital affair in the home while the chil-dren were outside playing, her refusal to change her working hours so that she could be home to help with the children in the morning, and the fact that she uprooted the children three times and left Husband without notice. Morals are a pertinent factor to be taken into account in determin-ing whose custody will serve the best inter-ests of the child. *Hartig v. Hartig*, 738 S.W.2d 160, 161[2, 3] (Mo.App.1987). Pro-viding a good environment and stable home is the most important consideration in cus-tody cases. *R v. R*, 685 S.W.2d 598, 602[1, 2] (Mo.App.1985). Furthermore, if Wife re-ceives custody of her daughters, they would be separated from their brother, John. Absent exceptional circumstances, the children should not be separated. *In re Marriage of Mihalovich*, 659 S.W.2d at 801[2, 4].

The trial court determined that both par-ties were guilty of marital misconduct, but that most of the misconduct was on Wife's part in terms of the number of times she left Husband. The trial court concluded that neither parent was unfit to be custodi-an, but that Husband was "more fit" and "better able to address the psychological and emotional needs of the children." Where evidence does not preponderate in favor of either party, the trial court is vested with broad discretion in awarding custody. *In re Marriage of J____ H____ M____*, 544 S.W.2d at 587[1]. The record reveals substantial evidence to support the trial court's custody order. Thus, we do not find that the trial court erred in awarding custody of the three daughters to Husband.

■ In her second point, Wife claims that the trial court erred in the valuation and distribution of the marital assets be-cause they are not supported by substan-tial evidence, they are against the weight of the evidence, they are inequitable, and they are heavily and unduly weighed in favor of Husband.

First, Wife disputes the valuation of the marital home, which the parties purchased in April, 1986. The parties had paid $60,-000.00 of the $145,000.00 purchase price, leaving a mortgage of $85,000.00. The tri-al court awarded the home to Husband, and ordered him to execute a promissory note to Wife for $30,000.00, representing her interest in the marital home and pay-able in five years.

Wife contends that while the purchase price of the house was $145,000.00 and the mortgage was $85,000.00, the equity had to be greater than $60,000.00, because Hus-band had made improvements on the prop-erty including the planting of 50–60 rose bushes, 48 cedar trees, 7–8 pine trees, 2 oak trees, sod, grass, and a garden. Hus-band admitted that his improvements in-creased the value of the house. However, Husband and son, John, testified that Wife did not assist them in making the improve-ments, and also, at that time during the marriage, she did very little housekeeping. Wife testified that she was working full time, so she was unable to keep up with the household tasks as thoroughly as she had before she began working. Nevertheless,

Husband said that Wife did not contribute her earnings to the family or the household.

Wife testified that the contractor who built the house valued it at $165,000.00, but "he was willing to come down in order to sell the home so that he could recoup his monies and have more money to build more homes in the subdivision." Wife claims that, in accordance with the contractor's appraisal, the equity in the house is $81,-000.00 and her share should be one-half, or $40,500.00. However, other than her testimony, Wife offered no evidence to support the contractor's valuation, and the appraisal which she submitted valued the house at $152,000.00. Husband's submitted appraisal valued the house at $142,000.00.

The trial court possesses considerable discretion in the division of marital property and although the division must be just and equitable, it need not be equal. *Wynn,* 738 S.W.2d at 918[1]. The trial court's $30,000.00 award to Wife was calculated on a value of $145,000.00, which was within the range of the evidence of the property value. Thus, we find no error.

■ Next, Wife disputes the trial court's finding that Husband's tailor business had no value. Wife's expert, Dr. James Jennings, a professor of accounting at St. Louis University, testified that "the concept of valuing a business is to determine the earning power of the business and determine what a reasonable buyer would be willing to pay for established earning power ... that particular method is generally referred to as the capitalization of earnings method." After reviewing Husband's tax returns and records for 1985 and 1986, Dr. Jennings estimated that the value of Husband's business is between $43,400.00 and $47,700.00. He said that his valuation was the "going concern value" or "good will."

In *Hanson v. Hanson,* 738 S.W.2d 429, 436[7, 8] (Mo. banc 1987), our Supreme Court rejected the capitalization of earnings formula as a substitute for the fair market value evidence of the goodwill value, since the purpose of the capitalization formula is to place a present value on the future earnings of the business entity be-

ing valued. Future earning capacity is not marital property. *Id.* at 435[5]. As a matter ·of proof, the existence of goodwill is shown only when there is evidence of a recent actual sale of a similarly situated practice, an offer to purchase such practice, or expert testimony and testimony of members of the subject profession as to the existence of goodwill in a similar practice in the relevant geographic market. "Absent such evidence, one can only speculate as to the existence of goodwill." *Id.* at 435[6] (footnote omitted).

Here, such evidence was not presented. Wife offered no evidence of sales or offers for sale of other tailor shops within the St. Louis area. Husband testified that no one has ever offered to purchase his business, and that his business has no value to anyone else because each customer comes specifically to him for his unique suit designs. Mr. Michael Kegler, also a custom tailor, testified that he and Husband are the only real custom tailors in the St. Louis area. He stated that other shops may call themselves custom tailors, but they only take measurements and send them elsewhere for manufacture. He concluded that no one would buy his business because they could not work with his customers. Thus, there was substantial evidence to support the trial court's finding that Husband's tailoring business has no value.

■ Wife also alleges that the court erred in accepting Husband's $2000.00 valuation of a bank account, which was used by Husband in his business. Wife valued the account at approximately $13,000.00, which was the account balance when the parties separated. Wife argues that the record is replete with Husband's dissipation of the account following their separation to meet his own obligations, thereby reducing the balance in the account from $13,000.00 to $2,000.00. Nevertheless, we do not find that the trial court erred in valuing the account at $2,000.00, since the proper data to value marital property is the date of trial, not separation. *Taylor v. Taylor,* 736 S.W.2d 388, 390(1) (Mo. banc 1987).

■ Finally, Wife contends that, in addition to erroneous valuation of the marital property, the trial court erred in its distribution of the property. Based on the trial court's property valuations, Wife received 48% of the marital property and Husband received 52%. Wife claims that the evidence does not support any disparity in the distribution of the marital property.

The court shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage.

Section 452.330.1 R.S.Mo.1986.

A disparity in the value of marital property awarded to each spouse is justified if any of the relevant factors to be considered while dividing such property justifies an unequal distribution. *In re Marriage of Dildy*, 737 S.W.2d 756, 760[2] (Mo.App. 1987).

Husband adduced evidence showing that Wife had left him five times, and that she had had an extramarital affair. He testified that Wife worked during the marriage, but she did not contribute her earnings to the family. He also stated that Wife neglected the household during the last two years of the marriage. In light of all the evidence, we conclude that the trial court's distribution of the marital property was fair and equitable and not an abuse of discretion.

■ In her final point, Wife claims that the trial court erred in adopting, verbatim, Husband's proposed decree of dissolution because the adoption of a party's decree is inconsistent with established Missouri law, and said decree was not supported by substantial evidence and was against the weight of the evidence. However, the trial court did not adopt Husband's proposed decree verbatim. The final decree differed in that it reduced Wife's child support obligation from $335.00 per month as proposed by Husband's decree to $240.00 per month, and awarded Wife 75% of her attorney's fees, whereas Husband's proposed decree awarded Wife nothing.

Moreover, adoption of a party's proposed decree is not per se erroneous, *Leady v. State*, 714 S.W.2d 221, 222[1] (Mo.App. 1986), especially since we have found that the trial court's judgment is supported by substantial evidence and is not against the weight of the evidence.

Judgment affirmed.

DOWD, P.J., and HAMILTON, J., concur.