**In re the Marriage of James L. HOGAN, Respondent,**

v.

**Magdalena HOGAN, Appellant.**

**No. 57280.**

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 11, 1990.

Susan M. Hais, Theresa Counts Burke, St. Louis, for appellant.

Ellen F. Watkins, Clayton, for respondent.

STEPHAN, Judge.

Magdalena Hogan appeals from the judgment of the trial court dissolving her thirty year marriage with James L. Hogan. She raises several points on appeal concerning the award of maintenance and attorney's fees, the valuation of certain marital property and the division of marital property. We affirm.

The parties married May 3, 1958, and separated May 30, 1985. At the time of trial on June 13, 1989, husband was fifty-eight and wife was fifty-nine years old. Their three children were already emancipated.

Husband worked as a commercial artist at various jobs until 1963 or 1964 when he started his own business, the James Hogan Art Studio located on Macklind Avenue in the City of St. Louis. In 1968 he also began teaching full-time at Forest Park Junior College. In 1985, after seventeen years at the college, he decided to retire under its early retirement incentive program and to pursue only his business at the art studio. That same year he also formed a partnership in Grae Gallery of St. Louis, a fine arts gallery where art on consignment was displayed for sale. The

gallery space was located in the same building as his studio on Macklind. By the time of trial, however, he had shuttered the gallery because it was losing money.

Wife, a woman with excellent academic credentials upon completing college, had worked initially as a dress designer full-time for five to seven years. She continued to work part-time in that field until 1964. From 1965 to 1979, she worked occasionally with her husband in the commercial art field; however, she directed her energy primarily as homemaker and caretaker for the couple's three children.

Wife had various surgeries in the 1970's and a breast biopsy in 1986. At the time of trial, she was under doctor's care for back and neck problems and osteoporosis. She also was receiving psychiatric treatment.

After hearing this evidence, and more, in a one day trial, the trial judge issued lengthy findings of fact and conclusions of law. A summary from the dissolution decree reflects the marital property distribution (other than husband's pension):

| Petitioner/Husband | | Respondent/Wife | |
| --- | --- | --- | --- |
| Macklind Building | $64,540.00 | Greenview Residence | $64,400.00 |
| 1972 Oldsmobile Cutlass | 400.00 | 1986 Oldsmobile Calais | 7,000.00 |
| 1981 Mercury Lynx | 100.00 | Jewelry, furs and luggage | 1,000.00 |
| Household items | 750.00 | Household items | 9,060.00 |
| Assets of Grae Gallery partnership | –0– | Bank accounts | 17,790.83 |
| Assets of James Hogan Art Studio | 3,000.00 | | |
| Bank accounts | 15,716.05 | | |
| | $84,506.05 | | $99,250.83 |

The trial court also awarded wife substantial furnishings and household goods as her separate property, in addition to about seventeen thousand dollars in funds from certificates of deposit. Husband was awarded furniture and antiques from his family valued at about sixteen hundred dollars as his separate property.

■ Before we address appellant's five points, we note at the outset that our review is governed by the principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32[1–3]. Further "[a]s trier of fact, it is the function, indeed the duty, of the trial court to decide the weight and value to be given to the testimony of any witness. On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence." *Wynn v. Wynn*, 738 S.W.2d 915, 918[1] (Mo.App.1987). "We defer to the trial court even if the evidence could support a different conclusion." *Id.; Langdon v. Langdon*, 792 S.W.2d 645, 646 (Mo.App.E.D.1990).

■ Appellant's first point asserts the trial court's award of maintenance was flawed. In its decree, the trial court made several findings of fact germane to the issue of maintenance. The court noted that, subject to a *pendente lite* order entered October 27, 1986, husband had made monthly payments of $1,050 to wife for temporary maintenance. Of that amount, wife attested in her deposition taken in October 1988 that she had saved about $150 monthly up to that time. However later, at trial, wife testified that she had only saved $100 per month. Husband had also been paying wife's health insurance premiums; however, by the time of trial, wife had begun to make her own health insurance payments of $185 per month. The trial court determined, after adding the expense of the health insurance premiums to the support amount husband had paid wife during their separation, that $1235 reflected wife's reasonable needs. He found wife capable of contributing $500 per

month to meet these needs and ordered husband to pay $930 in maintenance which, after deducting federal and state income tax, netted $735, the difference between wife's needs and her own contribution to those needs.

The trial court further provided that husband's obligation to pay wife maintenance be reduced dollar for dollar by whatever amount wife receives from husband's retirement plan, not to exceed $400 per month, beginning October 1990 or whenever husband's retirement plan actually commenced. The trial court implemented the same strategy in reducing wife's monthly maintenance award based on any social security benefits she would receive as his ex-spouse beginning when wife turns sixty-five on May 23, 1995.

Wife criticizes the maintenance award for seven reasons. She states the trial court erred in awarding certain marital property as maintenance causing her to dissipate the property to support herself; in decreasing the maintenance award with no substantial evidence to support it; in attributing income to her without sufficient evidence to do so; in basing the amount needed by her on a *pendente lite* award; in not taking into account her age and health; in failing to take into account husband's imputed earnings from having quit a job when the parties separated; and in considering disability payments without the necessity of modification. We address each of her seven subpoints.

Wife's first subpoint contends the trial court erred in finding that husband's Missouri State Teachers' Retirement Plan was a marital asset which could be used to fund a portion of her maintenance. She recognizes that husband's retirement plan is a marital asset subject to division but argues that the trial court's order permitting husband's maintenance payments to her to be reduced, dollar for dollar, by the amount she receives from his retirement fund effectively requires wife to expend her marital property to fund her maintenance. She concludes that, in this case, the court considered maintenance first and determined how it could be funded by marital property.

We are at a loss to understand wife's specific complaint about the trial court's reduction of wife's maintenance based on her receipt of future pension benefits. Pursuant to section 452.335.1 RSMo Cum. Supp.1989, a court may award maintenance if the spouse seeking maintenance *"[l]acks* sufficient *property, including marital property apportioned* to him, to provide for his reasonable needs"; and is unable to support himself through appropriate employment. (Emphasis added.) The court here ordered husband's pension to be divided equally between the parties. It found that the pension had a present cash value of approximately $51,520.00, but that to distribute it in a lump sum cash form would hurt both parties by denying them the benefit of the matching funds contributed by the State through the St. Louis Community College District. The court elected for a deferred payment plan in which both parties would receive about four hundred dollars a month for the rest of their respective lives. To the extent that wife would receive the pension proceeds in the future, the trial court impliedly found this apportionment of the pension offset any lack of property by wife in meeting her reasonable needs otherwise entitling her to maintenance. This court has recently recognized that upon valuation and division of a pension plan, such sum may reduce the amount of maintenance awarded. *See e.g. Schelsky v. Schelsky,* 796 S.W.2d 888, 893 (Mo.App.1990).

■ Wife's second and third attacks on the maintenance award claim the trial court's determination that wife could contribute $500.00 to meet her reasonable needs lacked any substantial evidence. The trial court stated as follows:

Respondent [wife] is to some extent able to obtain employment on a limited basis and to help contribute towards her own support. Respondent testified that she knew how to sew, had sewn for herself and knew of no reason why she could not sew clothing for others if they were paying her to do so. The testimony of various witnesses, including Respondent herself, indicated that Respondent is

an intelligent woman with a college degree and a background in fashion design and commercial art. Although the Respondent has been out of the work force for some time, the Court believes and finds that she can secure work as a seamstress either outside the home or inside the home depending on her preference.

The court attributed to wife the ability to work some fifteen to twenty hours weekly, grossing $645.00 monthly at a minimum, enabling her to contribute $500.00 monthly to her own support.

Wife argues that the court's findings of fact are in error because "[t]he chances of someone hiring a fifty-nine year old woman who had not worked in thirty years as a seamstress, who hadn't sewed in fifteen years, is at best speculative." We disagree. The trial court heard testimony from husband's vocational expert Dr. Bernstein that current demand for seamstresses was good and that salaries ranged from seven to ten dollars per hour. He also testified there were positions for seamstresses to work in their own homes. Substantial evidence supported the trial court's finding of wife's ability to contribute in part toward her own support. The statute authorizes the court to consider a party's "ability to meet his needs independently." Section 452.335.2(1) RSMo Cum.Supp.1989. We find no abuse of the trial court's discretion in this regard.

■ Wife's fourth sub-point states that the trial court erroneously based the maintenance award on the support amount she had received *pendente lite*. The trial court was free to believe that the amount wife received during the parties' separation, supplemented by an amount for increased health insurance costs, reflected her reasonable needs despite wife's income and expense statements at trial claiming monthly expenses of $2,467.00. Wife's own testimony that both she and husband had lived on his monthly income of $1,600.00 per month prior to their separation and that she had saved about $100.00 per month during their separation until October 1988 is sufficient evidence for the trial court's calculation of an amount representing wife's reasonable needs.

■ Wife's fifth and sixth subpoints state the trial court's award of maintenance failed to take into account the age and health of wife or husband's imputed earnings from having quit a job at the time of separation. The trial court expressly found wife to be in poor health and recognized that she would be sixty-five on May 23, 1995, when it made its award of maintenance. In light of these specific findings, the trial court did, in fact, consider wife's age and health, despite appellant's assertion to the contrary.

■ Appellant does not elaborate on her contention that the trial court failed to impute income to husband, who had quit his $32,000.00 teaching position at the time of separation. Husband testified he had quit because he was "burned out" after seventeen years of teaching and juggling his business as a sideline. His continued employment at the college would have required additional classroom hours with no increase in pay. By taking advantage of early retirement incentive program, husband received a $25,000.00 lump sum payment and continued benefits, including hospitalization insurance for himself and his dependents. The lump-sum payment was used in part to buy wife a new car and to pay living expenses, including maintenance to wife. Wife presented no evidence that husband's early retirement from teaching had any negative impact on her standard of living. His career move does not bespeak the scenario wife attempts to portray of a husband leaving lucrative employment to escape financial obligations of maintenance. Husband continues to work fifty-to-sixty hours weekly in his own business. Husband projected his income for taxes for 1989 to be $23,247.00 or $1,937.00 per month. After deducting the $935.00 maintenance payment to wife, husband will have about $1,000.00 to meet his own expenses. Wife's fifth and sixth subpoints have no merit.

■ Wife's final salvo in her attack on the maintenance award is leveled at the

trial court's consideration of social security benefits in the award. The trial court's dissolution decree stated as follows:

12. The Court finds that Social Security may reasonably be expected in the future to pay [Wife] benefits as an ex-spouse. The Court finds that the maintenance obligation of [Husband] to [Wife] should be reduced to the extent that Social Security benefits are paid to and received by [Wife]. When [Wife] becomes 65, on May 23, 1995, she should be eligible to begin drawing the sum of about Three Hundred Seventy–Two Dollars ($372.00) per month as and for social security, as shown on [Husband's] Exhibit "8" and as per testimony from Mr. Dave Johnson, a supervisor at the Social Security Administration. It is the Court's intention, therefore, that [Husband's] obligation to pay maintenance to [Wife] be reduced, dollar for dollar, by whatever amount per month is paid to [Wife] as social security benefits for an ex-spouse, at such time as said payments are paid to and received by [Wife].

13. The Court's Order with respect to maintenance will be made modifiable and will terminate on [Wife's] death or remarriage. The Court notes that it is appropriate to decrease the maintenance amount where there is evidence or a reasonable expectation that the circumstances of the parties will be markedly different in the future. *Russell v. Russell*, 740 S.W.2d 672 (Mo.App.1987). Here the parties are 59 years old and retirement funds and social security monies will soon begin to be paid at dates that are reasonably certain in the not too distant future. [Husband] testified that he will be retiring from the commercial art business at age 65, which is only five and one-half years from now. The Court recognizes that the cost of litigating a Motion to Modify a few years from now could further and unnecessarily deplete what little cash is left of the parties' assets.

Wife cites *Craver v. Craver*, 649 S.W.2d 440 (Mo. banc 1983), for the proposition that the trial court can reduce husband's maintenance obligation based on future So-cial Security benefits received by wife as his ex-spouse only by way of a motion to modify upon a showing of changed circumstances in accordance with section 452.-370.1 RSMo Cum.Supp.1989. In *Craver*, the Missouri Supreme Court held that the former husband charged with a duty to make support payments to his former wife was not entitled as a matter of law to a setoff equal to the amount of Social Security benefits which his former wife began to receive through his account some nine years after the entry of the divorce decree. In reaching this result, the court relied upon *Chase v. Chase*, 74 Wash.2d 253, 444 P.2d 145 (1968), a child support case, finding its approach to be fundamentally sound. *Chase* states, in part, as follows:

disability and resulting entitlement to social security are changes in conditions of the parties to be considered in a modification [proceeding] but do not give rise to a modification *or deduction without affirmative action by the Court* for they are not necessarily determinative. (Emphasis added.)

74 Wash.2d at 259, 444 P.2d at 149.

In *Craver* the parties' settlement agreement specifically provided for husband's payment of maintenance to wife and specifically provided for husband's maintenance obligation to increase when their son became emancipated or reached the age of majority. 649 S.W.2d at 441. Both the final decree entered and the parties' agreement were silent concerning the effect of wife's receipt of Social Security benefits upon husband's maintenance obligation. Husband unilaterally determined such benefits entitled him to a reduction in maintenance payments.

*Craver* differs from this case because of the active voice of the court here. The court here took affirmative action in its decree by weighing the respective circumstances of the parties and then deciding that husband's maintenance obligation should be reduced upon wife's receipt of Social Security benefits attributable to husband's employment efforts. We hold the trial court could consider Social Security benefits, among others, as "relevant

factors" under the guidelines of section 452.335.2(10) RSMo Cum.Supp.1989 in fashioning decretal maintenance. The parties, likewise, would also have been free to consider such benefits had they utilized a contractual agreement to resolve such issues as maintenance. *Craver* makes clear such options are available in its discussion comparing decretal maintenance with contractual support obligations where it observes as follows:

> Contractual obligations to provide support in lieu of alimony or maintenance thus are governed by the terms of the contract. Any dispute concerning those terms should be resolved in accordance with ordinary and accepted principles of contract construction. The prudent attorney, as legal draftsman, no doubt will seek to express in the contract itself the intent of the parties regarding the effect of Social Security benefits upon the obligation to pay.

649 S.W.2d at 444.

■ We agree with wife that Social Security benefits are unassignable as marital or separate property. Nevertheless, the benefits or potential benefits derived from Social Security are economic factors to be considered, along with other factors, in the disposition of marital property and the award of allowances, including maintenance. *Accord Rudden v. Rudden,* 765 S.W.2d 719, 720 (Mo.App.1989). Moreover, at the time the reduction of maintenance occurs, wife will have available to her the power of a motion to modify, should her situation so warrant. Based on the foregoing authorities, we deny appellant's sundry attacks on the award of maintenance.

■ Wife's second point states the trial court improperly valued husband's business, the James Hogan Art Studio, a sole proprietorship. In its distribution of marital assets, the trial court found the studio to be a marital asset with a liquidation value of three thousand dollars, representing the sum of the equipment and inventory. Wife states the court erred by not including any amount attributable to goodwill because her expert, a certified public accountant had testified that fair market value of the business was seventy-five thousand dollars, a figure which included an unspecified amount for goodwill. The expert said his valuation represented the "going concern" of the business.

In its detailed findings of fact, the trial court observed that wife's expert derived his fair market value of the business using what the expert called a "common sense" approach of valuation; that neither party presented evidence tending to show the availability of a qualified and willing buyer for the business; and that evidence establishing the business had any measurable goodwill which could be specifically identified and valued was unconvincing. The court concluded, absent any evidence of a willing buyer, the worth of husband's business was limited to its liquidation value. We find no error in its conclusion.

Both parties acknowledge that *Hanson v. Hanson,* 738 S.W.2d 429 (Mo. banc 1987), is the leading case in Missouri addressing the issue of valuation of goodwill in a professional practice as a marital asset. The distinction between commercial goodwill and goodwill as an intangible asset in the context of a professional practice was drawn in *In re Marriage of Brooks,* 742 S.W.2d 585, 588–589 (Mo.App.1987). Wife relies upon *Brooks* and argues that husband's business, as a commercial enterprise and not a professional practice, did, in fact, have an element of goodwill which the trial court overlooked.

We consider *Brooks* informative, but readily distinguishable from this case. The expert in *Brooks* used a variation of the capitalization of excess earnings method of valuing goodwill and testified affirmatively that he had access to all the books and records necessary to prepare an assessment of the business based upon its earnings. 742 S.W.2d at 589. Unlike *Brooks,* the expert here admitted he did not actually use a capitalization method of valuation, but rather a "common sense" method. He readily acknowledged that he was missing a quantity of information normally utilized to derive the value of the business.

*Ikonomou v. Ikonomou,* 776 S.W.2d 868 (Mo.App.1989), is more nearly akin to this

case than is *Brooks.* In *Ikonomou,* the wife had offered no evidence of sales or offers for sale of other tailor shops within the St. Louis area. The husband had testified no one had ever offered to purchase his business. This court upheld the trial court's finding that the husband's tailor business had no value.

Similar testimony was before the trial court here. Husband's art studio involved his personal creative talent. No evidence of the sale of other or similar businesses was adduced. Wife's expert stated he was unaware of any market to sell a business such as the James Hogan Art Studio. There was substantial evidence to support the trial court's finding that husband's business, although a commercial enterprise, had no value attributable to goodwill.

■■■ Wife's third point states the trial court erred by including "capital gains" in its valuation of another marital asset, the commercial building at 1329 Macklind where husband's studio was located. The trial court found the fair market value of the building to be three hundred thousand dollars with a net sale price of two hundred eighty-two thousand dollars after allowing eighteen thousand dollars as a six percent real estate commission. From the net sale price, the court further subtracted amounts attributable to the mortgage and "capital gains" taxes to derive the net equity of the property. Wife argues the trial court improperly considered "capital gains" because there was no evidence the property was going to be sold.

Husband initially responds that the parties and witnesses have incorrectly referred to a "capital gains tax" in discussing the tax consequences of any sale of the Macklind property. Husband correctly notes that with the 1986 tax reforms, Congress abolished the special tax treatment of profits derived from the sale of property, *i.e.,* capital gains, so that such profits are now taxed in the same manner as ordinary income.

■■■ Wife correctly states that the proper date for valuing marital property in dissolution proceedings is the date of trial. *Doyle v. Doyle,* 786 S.W.2d 620, 622[4]

(Mo.App.1990). Wife emphasizes there was no evidence at trial the commercial property on Macklind was to be sold. Wife overlooks that experts for both parties attested to the property's fair market value. The concept of fair market value assumes the sale of the property to an interested buyer. Thus, we are reluctant to find any error by the trial court in presuming a sale of the real estate with its attendant tax consequences in order to value that marital asset. Furthermore, a court is entitled to take cognizance of current inflationary trends and tax liability in dividing marital property. *In re Marriage of Faulkner,* 582 S.W.2d 292, 296 (Mo.App.1979). We will disturb the trial court's division of property only where it is improper or where an abuse of discretion is found. *Taylor v. Taylor,* 736 S.W.2d 388, 391 (Mo. banc 1987). Furthermore, wife has not claimed that the trial court's consideration of the tax consequences from any sale of the commercial property rendered its distribution of the marital property unfair. We deny wife's third point.

■■■ Wife's fourth point asserts trial error in failing to consider husband's marital misconduct, the length of the marriage, and the disparity in the parties' incomes in its division of the marital property. In our review, we proceed on the presumption that the trial court considered all the evidence, including wife's needs and husband's misconduct. *Russell v. Russell,* 740 S.W.2d 672, 674 (Mo.App.1987). Section 452.330 RSMo Cum.Supp.1989 requires the trial court to make the property division just and equitable in light of the particular circumstances of the parties and the statutory factors to be taken in consideration. *Russell,* 740 S.W.2d at 674. The trial court is vested with broad discretion in dividing the marital property, and its order will be affirmed unless there is no substantial evidence to support it or it appears from the record that the trial court erred or abused its discretion in prescribing such division. *Id.*

The trial court divided the marital property with $99,250.83 to wife and $84,506.05 to husband, or approximately fifty-four

percent to forty-six percent in favor of wife. The record reflects that, during the parties' marriage, wife's health declined, leading to strains between husband and wife. Although husband recognized wife had genuine physical ailments, he felt she dwelt on being sick, seeing thirty to forty doctors per year. Wife complained of her ailments or husband's imperfections during sex, and would sleep with her feet at his head. Somewhere in the mid-seventies, the parties discontinued their sexual relationship.

Husband then engaged in two extramarital affairs. His first lasted two to four weeks and occurred in the late seventies after the parties' marital relations had ceased. His second affair, still ongoing, began approximately one and one-half years prior to the parties' separation. Husband admitted he also developed a drinking problem late in the marriage which he successfully resolved through Alcoholics Anonymous.

Nothing in the record as we review it warrants a disproportionate distribution of the marital property. Misconduct is only a viable factor in dividing property when the misconduct places an extra burden on the partnership endeavor. *Divine v. Divine*, 752 S.W.2d 76, 78 (Mo.App.1988). We conclude that the trial court did not abuse its discretion in failing to find husband's conduct placed undue marital burdens on wife. Wife's evidence did not establish husband's admitted misconduct placed any undue burdens on her. We deny wife's fourth point.

Wife's final point challenges the trial court's award of her attorneys' fees. Wife's attorney testified to having rendered legal services worth sixteen thousand dollars and to having incurred expenses of about one thousand one hundred fifty dollars. Of this amount, wife had paid her attorneys about thirty-four hundred dollars. The trial court ordered husband pay wife's attorneys six thousand dollars. Wife argues the trial court's order effectively compels wife to dissipate the marital and separate property awarded to her to provide for her fees.

A trial court is to consider all relevant factors when deciding whether to award or deny attorney's fees. Section 452.355 RSMo Cum.Supp.1989. A trial court's determination on the issue is discretionary and reviewable only for an abuse of discretion. *Russell*, 740 S.W.2d at 675. Finally, the trial court has broad discretion in the award or denial of attorneys' fees. *Picou v. Picou*, 789 S.W.2d 522, 525 (Mo.App. 1990).

The trial court here specifically observed that "the level of litigation both before and during the trial of this case far exceeded the complexity of the issues over which the parties fought." The trial court acknowledged that at the time of its decree wife was unemployed while husband was currently operating a going business concern. The court recognized, however, that husband had his own attorney's fees to pay, in addition to "substantial maintenance." It also took into consideration the separate and marital property awarded to wife. We find no abuse of the broad discretion afforded the trial court in its award of attorney's fees. Point denied. The decree of dissolution rendered by the trial court is affirmed in all respects.

CARL R. GAERTNER, P.J., and SIMEONE, Senior Judge, concur.