**Joann M. WILSON, a/k/a Joann M. Hood and Joann M. Papper, Petitioner/Appellant/Cross–Respondent,**

v.

**Robert E. WILSON, Respondent/Cross–Appellant.**

**No. 57979.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 26, 1991.

Raymond A. Bruntrager, Mary P. Schroeder, Bruntrager & Billings, P.C., St. Louis, for petitioner/appellant/cross-respondent.

Kenneth S. Lay, Tremayne, Lay, Carr, Bauer & Nouss, Clayton, for respondent/cross-appellant.

AHRENS, Judge.

This is a consolidated appeal from an amended dissolution decree entered February 1, 1990. Wife alleges error in the trial court's valuation of the family business, distribution of marital property, and failure to award wife temporary maintenance and attorneys' fees. Husband cross-appeals from an order granting wife's motion for maintenance, attorneys' fees, and costs pending appeal. We affirm.

Husband and wife were married on September 11, 1948, and separated on or about June 26, 1985. Four children were born of the marriage, one of whom is deceased and three of whom are adults.

Husband is employed as an officer of the family real estate corporation founded during the parties' marriage; husband owns 110 shares of the company, wife owns 30 shares, and the parties' son, Robert, owns 70 shares and serves as the corporation's president. Early in the marriage, wife served as a real estate broker and branch manager for the business; she carried her brokers' license until the parties separated. At the time of the dissolution, husband and son operated the business. Both parties' experts presented greatly differing valuations of the corporation. Wife contends the trial court erred in limiting the value of the corporation to its tangible assets.

The parties own real estate with a stipulated value of $440,000.00, subject to a deed of trust for $75,000.00. During the marriage, the parties collected jewelry, silver, and substantial household goods, furniture, and furnishings. The existence and valuation of such property was the subject of extensive testimony at trial; husband contended wife had removed much of it from the marital home upon the parties' separation and had greatly overvalued it on a list of items she contends remained in the home at the time of the separation. Wife denied she had removed the property and claims she has no knowledge concerning what became of the items.

In 1979, wife opened an antique consignment shop which she operated until shortly after the parties separated. At trial, husband challenged wife's assertion that she received only $3,500.00 from the sale of the goods remaining in her shop. Husband further contended that many of the goods sold were the same items wife claims were remaining in the marital home at the time of the separation. The trial court found a lack of credible evidence to specifically identify or value all of the parties' household goods, furniture, and furnishings. The court also found that wife had removed substantially all of the jewelry from the parties' safe deposit boxes, and found a lack of credible evidence to determine the current value of the jewelry other than from the index cards wife kept which noted only the items' purchase prices.

Wife inherited approximately $100,000.00 in certificates of deposit upon the death of her mother during the parties' marriage. The trial court found the inheritance was converted to marital property when it was placed into a joint bank account. Wife contends she had no intent to make a gift to the marriage, and that even if the trial court properly deemed the funds marital property, husband squandered the portion he had withdrawn from the parties' account.

Lastly, both parties alleged misconduct on the part of the other. Wife claimed husband physically and mentally abused her during the year prior to the parties' separation; husband denied any such conduct. Shortly after the separation and while receiving $800.00 per month from husband as temporary maintenance, wife began living with a man and legally

changed her name to his. Further, wife altered the inscription on the headstone of the parties' deceased daughter in response to husband's alleged denial that the daughter was his child. The trial court found that wife's actions placed additional burdens upon husband prior to husband's filing a petition conceding the marriage was irretrievably broken; the court also found that the turmoil of the separation adversely affected husband.

In its decree, the trial court awarded no maintenance or attorneys' fees to either party. All jewelry, gold, silver and precious stones collected in the parties' safe deposit boxes were awarded to wife. Wife was also awarded all furniture, furnishings, household goods, and silver located in the marital home immediately prior to the parties' separation; husband was awarded the property remaining in the home after the separation. The property in the possession of the parties' children is to remain the children's property. The court awarded husband cemetery lots and all stock of the family business held in either husband's or wife's names. Further, the parties were awarded the certificates of deposit they each appropriated, and the cash surrender values of various life insurance policies were divided equally. Lastly, husband was awarded the marital home, subject to a $115,000.00 lien awarded wife. Court costs were taxed against husband.

■ Our review of this case is governed by Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the decree of dissolution unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy*, 536 S.W.2d at 32. The trial court is free to accept or reject all, part, or none of the testimony of any witness. *Stein v. Stein*, 789 S.W.2d 87, 92 (Mo.App. 1990). We view the evidence in a manner favorable to the decree and disregard all contradictory evidence. *Langdon v. Langdon*, 792 S.W.2d 645, 646 (Mo.App.1990); *Wynn v. Wynn*, 738 S.W.2d 915, 918 (Mo. App.1987). Further, we defer to the trial

court even if the evidence could support a different conclusion. *Langdon*, 792 S.W.2d at 646; *Wynn*, 738 S.W.2d at 918.

In her first point, wife alleges the trial court erred in finding the family business had a value consisting only of its tangible assets. Wife alleges the court improperly rejected her expert's capitalization method of valuation and instead relied upon a fair market value approach without considering the distinction between a professional practice and a commercial business enterprise.

■ In *Hanson v. Hanson*, 738 S.W.2d 429 (Mo. banc 1987), our supreme court held that "[b]ecause of the difficulties inherent in separating the reputation of the professional from that of his enterprise, evidence that other professionals are willing to pay for goodwill when acquiring a practice is, in our view, the only acceptable evidence of goodwill. Thus, as a matter of proof, the existence of goodwill is shown only when there is evidence of a recent actual sale of a similarly situated professional practice, an offer to purchase such a practice, or expert testimony and testimony of members of the subject profession as to the existence of goodwill in a similar practice in the relevant geographic and professional market." *Id.* at 435. The existence of goodwill in a professional practice may be established only by one of these methods. *In re Marriage of Parker*, 762 S.W.2d 506, 511 (Mo.App.1988).

Subsequent cases extend the *Hanson* tests for the existence of goodwill in a professional practice to commercial entities involving highly skilled personal services. In *Ikonomou v. Ikonomou*, 776 S.W.2d 868 (Mo.App.1989), this court applied the *Hanson* tests in affirming the trial court's determination that no goodwill existed in the husband's custom tailor business. *Id.* at 872. *Ikonomou* was cited with approval in *Hogan v. Hogan*, 796 S.W.2d 400 (Mo.App. 1990), where the court again applied the *Hanson* tests for the existence of goodwill in finding that husband's art studio, although a "commercial enterprise," had no value attributable to goodwill. *Id.* at 407–08. In cases involving highly skilled personal service businesses, there are inherent

difficulties in separating the reputation of the individual businessperson from that of the enterprise. It is this concern that prompted the *Hanson* court to set forth its tests for proof of the existence of goodwill in professional practices. *See Hanson*, 738 S.W.2d at 435. For this reason, we find the rationale of *Hanson* equally applicable to cases involving highly skilled personal service businesses, such as husband's real estate brokerage business.

■ In the case before us, no evidence was presented to prove the existence of goodwill in accordance with one of the methods approved in *Hanson*. Wife offered no evidence of sales or offers to purchase rural real estate brokerage businesses, nor did she offer testimony of rural real estate brokers or expert testimony concerning the existence of goodwill in a similar business in the St. Louis area. In fact, wife's expert made no attempt to prove the existence of goodwill by any method.

We note the recognition in *Hanson* that "[c]ourts which have employed capitalization formulae ... often appear to mix concepts of value with concepts of proof." *Hanson*, 738 S.W.2d at 435 n. 1. Such issues are easily confused even in cases involving the fair market value method of valuation, since the evidence required for proof of the existence of goodwill is also the best evidence of its value. *See Hanson*, 738 S.W.2d at 435, 436. However, the existence and valuation of goodwill are separate issues. *See Parker*, 762 S.W.2d at 509 (court finds its unnecessary to address the problem of proving value because it finds the evidence insufficient under the *Hanson* rules to establish the existence of goodwill). Further, "[e]xpert testimony concerning the value of goodwill based on capitalization formulae is not tantamount to proof of the existence of goodwill. An expert can simply assume the existence of goodwill and, using a capitalization formula, produce a value." *Hanson*, 738 S.W.2d at 435 n. 1. Because wife presented no proof of the existence of goodwill, substantial evidence supports the trial court's finding that husband's rural real estate broker-

age business has no goodwill value and no value above that of its tangible assets.

Although we find *Hanson* applicable to cases involving highly skilled personal service businesses, we do not intend our holding to apply to questions of goodwill raised with respect to all enterprises, regardless of the nature of the entity. Specifically, we make no finding with respect to businesses that do not involve the difficulty of separating the reputation of an individual businessperson from the goodwill of the enterprise.

In the instant case, husband moved to strike the testimony of wife's expert on the basis of *Hanson*. The trial court's overruling of the motion indicates it proceeded to consider the valuation testimony offered by the parties despite the lack of any evidence of the existence of goodwill, and further indicates the court viewed husband's business as an entity other than one to which *Hanson* is by its terms strictly applicable. However, even if *Hanson* is not controlling, we find substantial evidence to support the trial court's determination that the business has no value attributable to goodwill.

We relate a brief recitation of the valuation evidence that was before the trial court. Wife's expert, Ralph Ostermueller, was a certified public accountant. Ostermueller capitalized the earnings of husband's corporation based upon its "normalized" income history. The corporation's financial statements and tax returns showed losses for fiscal years 1984 through 1986, and a profit for the fiscal year ending in June of 1987. Ostermueller compared the corporation's financial statements and tax returns to a statistical source that compiled corporate financial data according to industry and asset size. Finding the corporation officers' salaries above the statistical average, Ostermueller "normalized" the business' actual earnings by adding as profit the amount of salaries the corporation had paid its officers in excess of the statistical average. Based on these figures, Ostermueller "weighted" the corporation's earnings for those years, attributing a 70% emphasis to the last year, 1987, and a 30%

emphasis to the previous years. Ostermueller adjusted the earnings upward by 15% to reflect "discretionary cash flow" (benefits), and discounted the earnings for lack of marketability. The earnings were capitalized on a 25% basis. After adjusting for risk, Ostermueller valued husband's corporation at $215,897.00.[1]

■ Husband's expert, Ross Burlemann, was also a certified public accountant. Burlemann examined the corporation's financial statements and tax returns for the fiscal years ending June 30, 1984, through June 30, 1988. Burlemann adjusted the business' earnings to reflect what he considered to be normal officers' salaries; he made no adjustment to one year's earnings, adjusted the earnings upward for two years, and adjusted them downward for two years. Burlemann then calculated a five-year weighted average of income, giving greater weight to the income of more recent years. In Burlemann's opinion, the weighting method used by wife's expert was improper, because it placed too much emphasis on one year of the business' history. Further, Burlemann testified that wife's expert's "discretionary cash flow" approach to valuation is inappropriate where no sale of the business is contemplated. Burlemann's calculations produced negative weighted average earnings even with no adjustments for salaries. Because he defined goodwill as *positive* earnings in excess of what would be considered normal for the industry, Burlemann concluded that husband's business has no goodwill value. For that reason, he valued the corporation at its book value of $17,642.00.

The trial court could properly have disbelieved the valuation testimony of wife's expert. *In re Marriage of Smith*, 785 S.W.2d 764, 767 (Mo.App.1990). Contrary to wife's contention, nothing indicates the court considered repeat business the only determinant of goodwill, to the exclusion of other relevant factors. Further, we find no evidence supporting wife's contention that the trial court rejected the use of capitalization formulae as a method of valuation. Both husband's and wife's experts used the same basic valuation approach; husband's expert did not capitalize earnings only because his preliminary calculations resulted in a negative earnings value. The end valuations of the experts differed largely as a result of differences in the amount of the officers' salaries, if any, attributed to the corporation's earnings. It was within the trial court's discretion to find that the salaries were not excessive and accept the valuation testimony of husband's expert. Point one is denied.

In her second point, wife challenges the trial court's determination that the inheritance wife received upon the death of her mother was marital property.

Upon the death of her mother in November of 1984 and prior to the parties' separation, wife inherited approximately $100,000.00 in certificates of deposit. Shortly thereafter, husband and wife placed the certificates in both their names and deposited the funds into a joint bank account. The trial court found that wife's inheritance was converted to marital property when it was placed into the joint account. The court further found that some of the inheritance was used to pay funeral and medical expenses of wife's mother, that funds from the account were used to pay marital bills, and that both parties at the time of the separation appropriated funds originally received as inheritance. The court awarded husband and wife the certificates they each appropriated and found that wife used $10,000.00 of the certificates she appropriated to repay a debt her deceased mother owed.

■ Pursuant to § 452.330.3 RSMo (Supp.1990), "property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouse in some form of coownership...." However, this presumption is overcome by a showing that

---

**1.** Using the corporation's 1988 tax return not included in his original calculation, Ostermueller valued the corporation at $104,000.00.

the property was acquired by gift, bequest, devise, or descent. § 452.330.2(1) RSMo (Supp.1990).[2] Because wife received by inheritance the property she now contends is separate, she has overcome the statutory presumption that the property is marital. However, placing the certificates of deposit in both husband's and wife's names is evidence of wife's donative intent to create marital property. *See Smith,* 785 S.W.2d at 766; *Kramer v. Kramer,* 709 S.W.2d 157, 159 (Mo.App.1986). Further, the placement of the certificates into a jointly titled account created a presumption that wife intended a gift to husband, the transferred funds being presumptively marital. *Smith,* 785 S.W.2d at 766–67.

Contrary to wife's assertion, no evidence indicates she did not intend a gift to the marriage. Although wife claims she testified that she intended to title the certificates in the names of her and her children, we find no such testimony in the record. Rather, wife testified that *both she and husband* put the certificates in both the parties' names; there is nothing in the record to indicate wife was coerced into doing so. We find substantial evidence to support the trial court's finding that wife's inheritance was marital property. Point two is denied.

■ In her third point, wife contends the trial court erred in failing to impute to husband the marital funds he allegedly squandered or diverted between the time of the parties' separation and the time of trial more than three years later. Wife contends husband misused funds from the parties' certificates of deposit and from loans he allegedly took out against insurance policies held in his name.

At the time of the separation, the parties owned approximately $61,000.00 in certificates of deposit originally received as an inheritance.[3] Of this amount, husband and wife appropriated approximately $41,000.00 and $20,000.00, respectively. Husband testified he used the funds that he appropriated to pay bills, wife's maintenance, interest and taxes on the parties' real estate, and the college expenses of the parties' son. It was within the trial court's discretion to accept husband's testimony. *Stein,* 789 S.W.2d at 92.

Further, we find nothing in the record to support wife's contention that husband misused an unspecified amount of funds he allegedly obtained as loans against insurance policies held in his name. Contrary to wife's contention, husband never testified he made loans against the policies; rather, he specifically denied taking out any new loans and stated that the increase in the policies' loan balances consisted of accrued interest or unpaid premiums. Husband presented a letter from a lender to corroborate his testimony with respect to at least one of the loan balances.

Because no evidence indicates husband secreted or squandered marital property in anticipation of divorce, reimbursement to wife is inappropriate. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 828 (Mo. banc 1984). Point three is denied.

■ In her fourth point, wife claims the trial court abused its discretion in the division of marital property. Specifically, wife contends the court failed to consider the disparity in the parties' incomes and attributed undue weight to wife's misconduct.

"A trial court is vested with considerable discretion in dividing marital property and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Rapp v. Rapp,* 789 S.W.2d 148, 152 (Mo.App.1990). We find no such abuse in the case before us.

---

2. The presumption is also overcome by a showing that the property was acquired by one of several other methods listed in § 452.330.2, none of which is relevant to this case. We also note that there is no dispute in this case regarding any increase in the value of the property acquired.

3. Wife contends husband testified that at the time of the separation, the parties owned approximately $89,000.00 in certificates of deposit. This is a misstatement of husband's testimony; husband testified that wife received $89,000.00 in inheritance, out of which remained $66,-000.00 at the time of the parties' separation.

The trial court in its findings specifically stated that in dividing the marital property it considered all relevant factors, including those set forth in § 452.330 RSMo (Supp. 1990). We find no evidence the court failed to consider the economic circumstances of each party. Further, nothing indicates the court placed undue weight on wife's misconduct, which included wife's post-separation affair, diversion of marital property, and alteration of the inscription on the headstone of the parties' deceased daughter. Under § 452.330, the conduct of the parties during the marriage is enumerated under § 452.330 as a factor for a court to consider in the division of marital property, and a "disparity in the value of marital property awarded to each spouse is justified if any of the relevant factors of Section 452.330.1 justify an unequal distribution." *McDonough v. McDonough*, 762 S.W.2d 827, 830 (Mo.App.1988). We cannot say the court erred in finding wife guilty of misconduct or in the amount of weight it attributed to such misconduct. We need not reconsider wife's claims concerning the court's designation of marital property and valuation of husband's business; substantial evidence supported the court's conclusion with respect to those issues. Point four is denied.

■ In her fifth and final point, wife claims the trial court abused its discretion in denying wife awards of temporary maintenance and attorneys' fees. We find no such abuse.

A court may grant a maintenance order to a spouse only if it finds that the spouse seeking maintenance both "(1) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) [i]s unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances makes it appropriate that the custodian not be required to seek employment outside the home." § 452.335.1(1) and (2) RSMo (Supp.1990). The trial court specifically stated it considered the statutory guidelines in denying an award of maintenance.

Wife was awarded the household furnishings, silver, and jewelry she appropriated upon the parties' separation. She was also awarded $20,000.00 in certificates of deposit (out of which she paid a $10,000.00 debt her deceased mother owed), half of the cash surrender values of the parties' life insurance policies, and a $115,000.00 judgment against husband to be satisfied by a lien on the marital home. Nothing indicates wife lacks sufficient property to meet her reasonable needs. Further, the evidence supports the trial court's implicit finding that wife is capable of self-support. Although wife has little formal education, she served as a real estate broker and branch manager for the family business early in the marriage and carried her brokers' license until the parties separated. Further, she operated an antique consignment business for approximately six years immediately prior to the separation. Wife requests three-year temporary maintenance to seek retraining as a gemologist, but made no effort to obtain such retraining since the time of the parties' separation and while living with a man other than husband and receiving temporary maintenance pending trial. We find substantial evidence to support the trial court's denial of maintenance.

■ Similarly, no evidence indicates the trial court abused its discretion in failing to award wife attorneys' fees. The court has considerable discretion in making this determination and must base its decision upon a consideration of all relevant factors, including the parties' financial resources and conduct during the marriage. *Klenke v. Klenke*, 742 S.W.2d 621, 625 (Mo.App.1987). Given the court's division of marital property and wife's admitted misconduct, we find no abuse of discretion. Point five is denied.

Lastly, we consider husband's cross-appeal. On February 7, 1990, wife filed a motion for temporary maintenance, attorneys' fees, and costs pending appeal. Husband filed a motion for reassignment requesting assignment of wife's motion to the judge who heard the underlying dissolution action. Husband also filed a motion

to strike wife's request for maintenance on the basis of wife's alleged waiver of maintenance at trial. Although wife initially waived any claim for maintenance, she withdrew her waiver during rebuttal testimony at the end of the trial. Finally, husband requested that the case be continued until the trial transcript was prepared, so that the judge who was to hear wife's motion would have access to the complete record of the case. All of husband's motions were overruled.

A hearing was held on wife's motion. Wife testified she was not working and had done no paid work since the parties' marriage was dissolved. Wife further testified she had sought employment in the antique trade, but had made no applications. Nothing prohibited wife from working, except that she was unable to stand on her feet all day due to arthritis and a "spinal condition." At the time of the hearing, wife had not obtained the retraining for which she sought temporary maintenance. Wife stated she had no significant property and no source of income other than loans from her father; her estimated monthly living expenses totalled $3,194.97. Wife's attorney estimated that attorneys' fees and costs on appeal would amount to approximately $4,250.00. Husband testified that his 1989 gross income was $19,500.00, and that he hoped to earn $3,000.00 per month in 1990. Wife's motion was sustained on April 30, 1990, and husband was ordered to pay to wife $450.00 per month as and for maintenance and $1,500.00 in attorneys' fees and costs.

On appeal, husband argues the trial court erred in sustaining wife's motion because in order to be heard wife was required to show a change in circumstances since the time of dissolution. Husband further argues that wife failed to demonstrate she was unable to support herself through appropriate employment, a prerequisite for an award of temporary maintenance. Lastly, husband argues that the same judge who heard the dissolution action was the only judge who could properly rule on wife's motion.

We find substantial evidence to support the trial court's ruling. "[W]here a party does not assert a change in financial conditions [after the dissolution decree is entered], a trial court need not conduct an evidentiary hearing on the issues of maintenance and attorneys' fees on appeal where those issues have recently been addressed and determined fully in the underlying dissolution decree." *Dardick v. Dardick*, 661 S.W.2d 538, 542 (Mo.App.1983). We do not read *Dardick* to hold, however, that such a hearing is necessarily improper. Therefore, the court's hearing on wife's motion was not erroneous even if wife failed to show financial circumstances that had changed since the date of the dissolution decree. Moreover, the court could have properly found that wife's appeal of the decree created a need for maintenance that was not present at the time the judgment was entered, since the appeal denied wife the immediate use of the property awarded her. *See Preston v. Preston*, 779 S.W.2d 363, 364 (Mo.App.1989); *State ex rel. Thomas v. Kelly*, 631 S.W.2d 685, 689 (Mo.App.1982).

Further, we find no error in the trial court's determination that wife was entitled to temporary maintenance, fees, and costs pending appeal. The evidence earlier detailed is sufficient to support this finding even though it is contrary to the maintenance and fee decision of the dissolution court. Although a motion pendente lite is incidental to and engrafted onto the divorce decree, it is a separate and distinct proceeding standing upon its own merit and in no way dependent upon the merits of the issues in the underlying dissolution suit. *Dardick*, 661 S.W.2d at 540. We find no abuse of discretion.

Lastly, we find no support for husband's contention that it is improper for a judge to hear and rule on a motion for maintenance and suit money pending appeal unless the same judge heard and decided the underlying dissolution action. Although in the interest of judicial economy such an arrangement may be preferable, we find nothing to indicate it is required. The judge ruling on wife's motion had be-

fore him the findings of fact and conclusions of law written with respect to the underlying decree. The parties had a full and complete opportunity to present evidence. We find no prejudice.

The judgment of the trial court is affirmed.

SMITH, P.J. and KAROHL, J., concur.