Marilyn L. MILLER, Appellant,

v.

Dennie R. MILLER, Respondent.

No. 57163.

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 16, 1990.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Dec. 5, 1990.

Application to Transfer Denied
Jan. 9, 1991.

Gale A. Todd, St. Louis, for appellant.

Greider and Mulligan, John K. Greider, Clayton, for respondent.

SIMON, Judge.

Wife appeals the trial court's decree in her action for dissolution of marriage.

On appeal, wife claims the trial court erred in: (1) making findings of fact and conclusions of law which were against the weight of the evidence and unsupported by evidence; (2) dividing marital assets and liabilities without considering the relevant factors of Section 452.330 and applying these factors in an unreasonable, arbitrary, and capricious manner; (3) setting child support without considering the relevant factors as required by Section 452.340 RSMo 1986, and applying those factors in an unreasonable, arbitrary, and capricious manner; (4) denying wife maintenance without considering all the relevant factors in Section 452.335 RSMo 1986, and applying those requirements in an unreasonable, arbitrary, and capricious manner; and (5) denying wife an award of attorney fees and court costs without considering the

relevant factors in Section 452.355 RSMo 1986, and applying those factors in an unreasonable, arbitrary, and capricious manner. We affirm.

Our review in this case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the trial court's judgment unless it is unsupported by substantial evidence, against the weight of the evidence, or unless the court erroneously declared or applied the law. *Degerinis v. Degerinis*, 724 S.W.2d 717, 719[1] (Mo.App.1987). In making this review, we presume the trial court followed the law unless the record shows otherwise. *Binkley v. Binkley*, 725 S.W.2d 910, 912[2] (Mo. App.1987). We also view the evidence in the manner most favorable to the decree and ignore contrary evidence even if it could support a different conclusion. *Wynn v. Wynn*, 738 S.W.2d 915, 918[1] (Mo.App.1987).

The basic facts are as follows. Husband and wife were married on February 22, 1969. Three daughters were born of the marriage, in 1970, 1973, and 1976, respectively. At the time of separation, all three children were minors, but at the time of dissolution the oldest daughter was emancipated. The parties owned two residences: a home on Rock Hill and a home on Dorsie. They also owned and operated two businesses, a Dairy Queen franchise and a Post–Dispatch paper route.

The parties separated in October, 1986, and wife filed her petition for dissolution of marriage on November 5 of that year. At that time, wife and husband both valued the Dorsie property at $150,000 with a $99,-000 debt, the Rock Hill property at $74,500 with a $29,000 debt and the Dairy Queen franchise at $75,000. Wife valued the paper route at $150,000 but husband valued it at $100,000.

In March of 1987, pursuant to an order *pendente lite*, the court gave custody of the three children, then all minors, to wife and ordered husband to pay $150.00 per month child support for each child and $1,550 per month maintenance, for a total of $2,000 per month. The court also ordered the parties to sell the Dorsie residence for no less than $150,000, but allowed wife to live there until the house sold if she paid the $1,046 per month mortgage payments. The Dairy Queen business was also ordered sold and wife was ordered to devote her full time to that business without taking any salary. Husband lived at the Rock Hill property and operated the paper route from that location.

This opinion will not attempt to relate the entire panorama of events that occurred from the March, 1987 order to the time of trial. Suffice to say that relations between the parties were not amicable. Husband paid the April and May, 1987 support payments. In April, wife began taking money from the Dairy Queen in violation of the court's order. That business closed twice while under wife's supervision, once for rain damage and once for sewer problems. Wife also took a job at Children's Palace, also in violation of the court's order. Husband failed to pay support after May, 1987.

In August, 1987, the court ordered the Dorsie property sold for $145,000. The $35,070.17 proceeds of this sale were deposited in an escrow account at Missouri Title Company. On January 29, 1988, the court relieved husband from his obligation to make the $2000 monthly payments to wife, instead ordering $2000 distributed to her each month from the escrow account.

In October, 1988, the court found wife guilty of contempt for wasting marital assets and not devoting full time to the Dairy Queen business, and appointed a receiver to preserve the parties' assets. In November, 1988, the court, upon the receiver's recommendation and the parties' agreement, ordered acceptance of a $25,000 offer for the Dairy Queen business.

In early 1989, the receiver submitted valuations of the marital assets as follows. The Missouri Title Company escrow account was almost depleted due to support payments to wife, Dairy Queen sales tax, payments of liens on the Rock Hill residence and payments to the receiver. The paper route was valued at $150,000 with $58,684 debt, which resulted in a $26,438 reduction of marital assets. The Dairy Queen sale proceeds offset by Dairy Queen

debt resulted in a negative value of $23,621.00, also referred to as a $98,621.00 reduction of marital assets. Wife was found to have acquired $20,776 in assets from the Dairy Queen, $5,760 of which constituted a loan to Bill Kramer, $7,003 of which wife admitted to using for her expenses prior to July 31, 1987, and $8,013, which was an unaccounted-for difference between positive cash flow and expenses. Based on the receiver's valuation, the court found wife in contempt and fined her $152,223.67 on January 23, 1989. On March 3, 1989, wife filed a voluntary petition in bankruptcy, but husband was granted relief from the automatic stay to proceed with the dissolution.

The final hearing on the petition for dissolution was held on April 18–21 and May 3 and 31, 1989. On July 7, 1989, the court entered its decree of dissolution, along with findings of fact and conclusions of law. The court specifically found that wife's testimony was not credible while husband was believable. The court also found that from March 31, 1987 to January 21, 1989, there was a $166,000 decrease in marital assets due mainly to wife's conduct regarding the Dairy Queen, namely, that wife failed to devote full time to this business and took funds from this business, all in violation of the court's order. The court further found this conduct caused substantial legal fees for both parties and was conduct which could be considered in dividing the marital property. Wife's conduct in filing bankruptcy was found to be an attempt to circumvent the court's January 23, 1989 contempt order and was conduct to be considered in dividing the marital property. The court also noted that significant amounts of assets had come to wife from the Dairy Queen but not been accounted for. The $5,000 reduction in the sale price of the Dorsie residence was found to be wife's fault. At the time of dissolution, wife worked at a hospital and was found to earn $1,560 per month, while husband earned $2,300 per month.

In its decree, the court gave custody of the two minor children to wife and ordered husband to pay support of $200 per month per child. The court found that neither party required maintenance and declined to award past due support because wife had depleted marital property. The court also affirmed the receiver's reports. Wife received the following marital property: a 1982 Chevrolet Blazer, a 1986 Acura Legend, the proceeds of the Dairy Queen sale, two bank accounts, certain household and personal property, the cash value of the life insurance on herself and the three children, and the loan due from Bill Kramer. Wife was allocated the debts on the vehicles awarded to her, the Dairy Queen debts due since March 3, 1987, credit card debts, and debts due to loans from her relatives. Husband received the paper route and the house on Rock Hill, which was necessary to store property and equipment for the paper route. He also received a 1987 Chevrolet Blazer, a 1969 Pontiac GTO, two bank accounts, certain personal property and household goods, the cash value of his life insurance and debts accrued on the awarded property since 3–31–87. Neither party was awarded attorney's fees.

Wife appeals, asserting the trial court erred in making its (1) findings of fact and conclusions of law; (2) award dividing the marital assets; (3) award of child support; (4) denial of maintenance and; (5) denial of attorney's fees.

We have reviewed the voluminous record in this case, giving due regard to the trial court's superior vantage point in assessing the demeanor and credibility of witnesses. *Lyles v. Lyles*, 710 S.W.2d 440, 442 (Mo. App.1986). We find the trial court's judgment was supported by substantial evidence, was not against the weight of the evidence, and correctly applied the law. Since an extended opinion would serve no precedential purpose, the judgment is affirmed pursuant to Rule 84.16(b).

CRANDALL, C.J., and REINHARD, J., concur.